GEORGE R. NEWELL *vs.* A. E. RANDALL.

June 9, 1884.

**Merchant's Statement of his Financial Condition held Fraudulent.—** B., a merchant, having applied to plaintiff to purchase goods on credit, was informed by the latter that "it would be necessary to know how he stood;" in response stating that "he had $3,000 in his business, consisting of merchandise and book-accounts, and that he had $300 in cash." On the strength of this statement, plaintiff sold him the goods on credit. B. had $3,000 of merchandise and book-accounts, and $300 in cash, but owed $2,100,—a fact which he failed to disclose. *Held,* that this was not mere passive non-disclosure. Under the circumstances, B.'s statement was calculated to convey the impression that he had $3,300 capital in his business, and to negative the idea that he was indebted to the extent of two-thirds of that amount. Having assumed to answer plaintiff's inquiry, he was not at liberty to make an evasive and partial statement, which, although literally true, contained only half the truth, and was calculated to mislead and convey a false impression.

Appeal by defendant from an order of the district court for Big Stone county, *Brown,* J., presiding, refusing a new trial.

*Woolley, Biddle & Reed,* for appellant, cited 2 Pomeroy Eq. Jur. §§ 901, 906; Bigelow on Fraud, 31; *Dambmann* v. *Schulte,* 75 N. Y. 55; 1 Story Eq. Jur. § 207; *Van Arsdale* v. *Howard,* 5 Ala. 596; 2 Parsons on Cont. 366; *Bell* v. *Ellis,* 33 Cal. 620; *Lupin* v. *Marie,* 6 Wend. 77, 83; *Smith* v. *Smith,* 21 Pa. St. 367; *Backentoss* v. *Speicher,* 31 Pa. St. 324; *Redington* v. *Roberts,* 25 Vt. 686; *Irving* v. *Motly,* 7 Bing. 543; *Cross* v. *Peters,* 1 Greenl. (Me.) 376; *Bidault* v. *Wales,* 19 Mo. 36; *Cochrane* v. *Halsey,* 25 Minn. 52.

*Lane & Dodge,* for respondent.

MITCHELL, J. Action of replevin, plaintiff alleging himself to be the owner and entitled to the possession of the personal property in controversy. Defendant, by his answer, denies plaintiff's ownership and right of possession, and alleges that it was the property of one Bauman, and justifies his taking, as sheriff, by virtue of certain writs of attachment against the property of Bauman. In reply, plaintiff alleges that he sold the property to Bauman on credit, induced so to do

by false and fraudulent representations of Bauman as to his financial condition, which rendered the sale voidable, and gave him the right to rescind and reclaim the property. On the trial it was undisputed or sufficiently proved that this property was sold by plaintiff to Bauman on credit. It also appeared that about the first of August, 1881, Bauman, who was in trade at Ortonville, applied to plaintiff's travelling agent, De Laittre, to purchase goods on credit; that De Laittre told him that "*it would be necessary to know how he stood;*" that Bauman said, in response to this, that "*he had three thousand dollars in his business, consisting of merchandise and book-accounts, and that he had three hundred dollars in cash.*" On this De Laittre took his order, and submitted it, together with his statement, to plaintiff, who, on the strength of it, shipped him the goods.

On the trial no evidence was offered to show that Bauman did not in fact have merchandise and book-accounts, to the amount of $3,000, and $300 in cash. But it was proved that, at the time he made the statement, he was indebted in his business to the amount of $2,100,— a fact which he failed and omitted to state. It also appears that, early in November following, Bauman was largely indebted on various other overdue debts, on which suits were brought against him, and his property attached; but as it does not affirmatively appear when these debts were contracted, they cannot here be considered.

It is earnestly contended that this evidence is insufficient to establish plaintiff's allegation that Bauman obtained the goods by fraud; that he was not inquired of as to his debts; and that no duty was imposed on him to make a voluntary statement in regard to them. It is doubtless the general rule that a purchaser, when buying on credit, is not bound to disclose the facts of his financial condition. If he makes no actual misrepresentations, if he is not asked any questions, and does not give any untrue, evasive, or partial answers, his mere silence as to his general bad pecuniary condition, or his indebtedness, will not constitute a fraudulent concealment. 2 Pom. Eq. Jur. § 906; Bigelow on Fraud, 36, 37. But this was not a case of mere passive non-disclosure. The object of De Laittre's inquiry clearly was to ascertain Bauman's financial condition and ability to pay. Bauman's statement was in response to that inquiry, and, when he undertook to

answer, he was bound to tell the whole truth, and was not at liberty to give an evasive or misleading answer, which, although literally true, was partial, containing only half the truth, and calculated to convey a false impression. The natural construction which would, under the circumstances, be put on this statement is that he had $3,300 capital in his business. It was couched in language calculated to negative the idea that this was merely the gross amount of his assets, and that he owed debts to the extent of two-thirds or the whole of that amount. Such a statement, made under the circumstances it was, might fairly and reasonably be understood as amounting to a representation that he had that amount of capital which was and would remain available, out of which to collect any debt which he might contract with plaintiff. We think this is the way in which men would ordinarily have understood it. It is immaterial that more explicit inquiries by plaintiff would have disclosed the fact of his indebtedness. It does not lie in Bauman's mouth to say that plaintiff relied too implicitly on this general statement. To tell half a truth only is to conceal the other half. Concealment of this kind, under the circumstances, amounts to a false representation.

It is suggested that it does not appear but that Bauman had subsequently paid for these goods. It does appear that they were bought on credit. If they were obtained by fraud, then the sale was voidable, *ab initio*, at the election of the plaintiff. If anything had since occurred which amounted to a waiver of the right to rescind, or a ratification, such as an acceptance of the purchase-money, we think this was a matter of defence, the burden of proving which would be on defendant.

Plaintiff introduced no evidence of fraud in his case in chief, but reserved it in rebuttal. When plaintiff rested his case in chief, defendant moved to dismiss the action, which the court refused. It is unnecessary here to decide whether this evidence should have constituted a part of plaintiff's case in chief, and whether or not the motion to dismiss was properly denied, inasmuch as the evidence was afterwards supplied. *Berkey* v. *Judd*, 22 Minn. 287.

Order affirmed.