In re BENDALL.

(District Court, N. D. Alabama, N. W. D.    December 30, 1910.)

No. 14.

BANKRUPTCY (§ 140*)—FRAUDULENT SALES—RECLAMATION OF PROPERTY.

Where a bankrupt secured goods on credit by false representations, in one case of the ownership of a fixed amount of assets, and in another by falsely concealing specific outstanding indebtedness to firms other than the seller, and the false assertion of possession of a specific bank balance, the sales were void, and the sellers were entitled to recover the property sold, as against the bankrupt's trustee, without proving that the bankrupt was in fact insolvent when he made such representations.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In the matter of bankruptcy proceedings of R. L. Bendall. On petition of the Courtney Shoe Company and the Baltimore Bargain House to reclaim property sold the bankrupt under alleged fraudulent misrepresentations. Petition to review referee's order denying the application. Granted, and applications allowed.

Kirk, Carmichael & Rather, for claimant Courtney Shoe Co.

D. A. Grayson and Walker & Spragins, for claimant Baltimore Bargain House.

Almon & Andrews, for trustee in bankruptcy.

GRUBB, District Judge. These two petitions arising out of the same bankruptcy may be considered together, though the facts differ. Each petitioner seeks to reclaim goods sold to the bankrupt and found in his possession at the time the petition was filed, because of fraud on the bankrupt's part.

The bankrupt commenced business early in the year 1909 upon a capital of $2,000, which was invested by the bankrupt in the purchase from the Baltimore Bargain House, one of the petitioners, of a general stock, amounting to about $5,000, on which $1,700 was paid in cash. In June, 1909, the bankrupt purchased from the Courtney Shoe Company, the other petitioner, a bill of $1,700 on credit. As a basis of credit he made to this petitioner, at the time of the purchase, a statement in writing of his assets and liabilities. In it he represented his stock of goods to be of the value of $5,500, his personal property other than his stock at $1,000, his cash in bank $250, real estate in Oklahoma $800, and an undivided interest in a farm at $500. The evidence is convincing that his stock was not worth more than $4,000; that he had but $50 in bank, and no personal property other than his merchandise, and no real estate; and that his assets are exaggerated at least $3,000, and possibly $5,000. The evidence shows that the Courtney Shoe Company acted in partial reliance upon the representations of the bankrupt made in this statement in making the sale to him of the goods sought to be reclaimed. On July 20th the bankrupt went to Baltimore to buy goods. Before leaving, he seems to have had a tentative understanding with the cashier of the local bank with which he did business to honor his check for $1,000; the overdraft to be made

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

good on his return by a loan or discount to him by the bank. He also wrote the Baltimore Bargain House from Tuscumbia, his home, that he would bring with him $1,000 to apply on the balance of his old account with them. Upon his arrival in Baltimore he sought to buy goods from the Baltimore Bargain House. While negotiations were pending, he represented to petitioner's salesman and creditman that he had made no substantial purchases of goods, other than groceries, except from petitioner. In truth, he had made purchases, prior to the making of such representations, from other firms of goods, other than groceries, in an amount exceeding $5,000. He also stated to petitioner's salesman that he had $1,000 in bank, the proceeds of his business, which he intended to apply on the account of petitioner, and gave petitioner a check on his local bank in that amount to accomplish this purpose. In truth he had no money in the bank, and the check was protested. Petitioner thereupon stopped deliveries of the goods purchased by the bankrupt by wire, and thereupon the bankrupt wrote petitioner stating that the check was refused by the bank because of the bank's error in referring it to his individual instead of business account, and the bank confirmed bankrupt's letter. In truth the bankrupt had but one account, his business account, and no balance to his credit on it. The bankrupt afterwards negotiated a loan from the bank and with its proceeds sent petitioner exchange to cover the dishonored check. Petitioner thereupon delivered the goods sought to be reclaimed. The misleading statements as to condition of bankrupt's bank account were, however, left uncorrected. The statement of the bankrupt that prior to the time of the purchase from petitioner he had made no substantial purchases from other firms was untrue and was material, in that its effect was to conceal from petitioner an outstanding indebtedness of more than $5,000. So the statement that he had a thousand dollars in bank, which he was applying to the payment of the old balance, and the source of which was from sales in his business, was material, since, if true, it indicated not only the possession of additional assets in that amount, but the existence of a profitable business from which they were derived. This representation was also untrue. The bankrupt had no such sum and obtained it thereafter only by incurring the obligation of a loan. It seems reasonably clear that petitioner would not have made the sale to the bankrupt if it had been apprised that the bankrupt had incurred additional indebtedness for goods purchased from other firms in excess of $5,000, and had no cash in bank, but was compelled to borrow money from his bank to make a payment on the old balance due it.

In the matter of the Courtney Shoe Company's petition, the evidence is convincing that the goods were obtained from it after a false representation was knowingly made to it by the bankrupt, for the purpose of obtaining credit, as to the amount of his assets; that his existing assets were by such statement not only exaggerated in value, but fictitious assets amounting to about $2,000 were included therein, making the false representation a material one and likely to influence petitioner in making the sale from which the loss resulted.

In the matter of the Baltimore Bargain House petition, the evidence is convincing that the goods were obtained from it after false statements of fact were made to it by the bankrupt, having a material bearing upon the decision of the petitioner in extending the credit and probably causing the loss to it resulting from the sale of the goods sought to be reclaimed.

The trustee's position is that such false statement would not justify rescission in any case unless the evidence was sufficient to establish the bankrupt's insolvency at the time of the purchases by him of the goods in controversy, and that the record fails to show any such evidence. In the view taken by the court, it is unnecessary to enter upon this question of the bankrupt's insolvency. If the fraud complained of by petitioners consisted in the fact that the bankrupt had falsely represented that he was solvent, or had fraudulently concealed his state of insolvency, when he purchased the goods of petitioners, the position of the trustee would be well taken. If the bankrupt were then solvent, there could have been no false representations or concealment of his insolvency. Proof of actual insolvency would be, therefore, essential to rescission. Here the representations complained of are of a different kind. In the Courtney Shoe Company petition there was a representation of ownership of a fixed amount of assets which was untrue. In the Baltimore Bargain House petition a false concealment of specific outstanding indebtedness to firms other than petitioner and a false assertion of the possession of a specific bank balance existed. Proof of insolvency is not essential to the establishment of such false representations, for they could be made as well by solvent as insolvent purchasers. On the contrary, the falsity of a representation of solvency depends upon the establishment of insolvency, and fraud in the concealment of insolvency cannot exist where insolvency itself does not exist. There can be no false representation with reference to and no fraudulent concealment of insolvency where there is no insolvency. The class of cases relied on by the trustee, holding proof of insolvency essential, are of this latter character. Where the representation is of a specific fact, the inquiries are whether the representation is untrue, and whether it is of a character, if relied upon by the seller, likely to induce a sale, which he otherwise would be unwilling to make. It is clear that a merchant might willingly sell to a retailer whose assets exceeded his debts by $50,000, and still be unwilling to sell to this same retailer if his assets merely equaled his debts. In each instance, the purchaser would be solvent. In the former, he would be a desirable, and in the latter might be a very undesirable, customer. If a solvent purchaser falsely represents the extent of his assets, with the purpose of obtaining credit, and the seller, relying on this false representation of amount of assets, extends the credit, when, in the absence of such representation, he would have declined the sale, and insolvency thereafter ensues, causing loss to the seller, the elements necessary to rescission are present, and the right of rescission complete.

The trustee introduced no evidence, and the brief filed by the trustee asserts that it was led to pursue this course because the allegations of the respective petitions were construed to put in issue only the class

of fraud depending upon the existence of insolvency. That the petitions are open to this criticism seems very doubtful. That injustice may not be done, the trustee will be permitted, by filing in the cause, within five days from the entry of the order, an affidavit that he is prepared to introduce evidence, in the event the Courtney Shoe Company matter is reopened, tending to show that the bankrupt had real estate and personal property other than his stock of merchandise and a bank account of substantially the value set out in the written statement made, and, in the same event, in the Baltimore Bargain House case, that no representations were made by the bankrupt as to not having purchased goods from other firms than petitioner and as to having $1,000 in bank at Tuscumbia, the proceeds of his business, when he made the purchases, or that such representations, if made, were true, to ask leave to set aside the orders, or either of them, made herein, and to have the respective cases, or either of them, for such purpose only, reopened, under terms to be then prescribed, by order of court.

The petitions for review in each case are granted, and an order will be entered directing the trustee to pay to the claimant, but not before the expiration of five days, and not before the hearing and disposition of the application to reopen in either case, if one is made upon affidavit filed within that time, out of the proceeds of the sales of the property, the respective amounts agreed upon as representing the value of the property of the respective claimants sought to be reclaimed; and the trustee is taxed with the costs of the petition for review in each case.