## In re PERELSTINE.

District Court, W. D. Pennsylvania. March 11, 1927.

No. 11702.

1. Bankruptcy ⟨key⟩140(2)—Seller, to rescind contract of sale, need not show bankrupt had intention not to pay, where there was positive misrepresentation, inducing credit.

It is not necessary, to support a rescission of sale of goods to bankrupt, to show that bankrupt, when buying goods, had an intention not to pay, where there was positive misrepresentation, which induced credit.

2. Bankruptcy ⟨key⟩140(2)—Proof of insolvency is unnecessary to support rescission of sale to bankrupt.

It is not necessary, to support a rescission of sale of goods to bankrupt, that proof of insolvency be established.

3. Bankruptcy ⟨key⟩151—Rights of parties in case of bankruptcy are determinable by their status at time petition was filed (Comp. St. § 9586 et seq.).

Rights of parties in case of bankruptcy are to be determined by their status at the time the petition in bankruptcy was filed, and whatever their rights were then as against the bankrupt can be asserted against his trustee notwithstanding the amendment of 1910 to Bankruptcy Act (Comp. St. § 9586 et seq.).

In Bankruptcy. In the matter of the bankruptcy of Morris Samuel Perelstine, trading as the Carter Shoe Company. Proceeding by Selz, Schwab & Co. for the reclamation of certain property in the hands of the receiver. Judgment for petitioner.

See, also, 7 F.(2d) 780, 15 F.(2d) 64.

L. M. Alpern, Maurice Chaitkin, Weil, Christy & Weil, and Sidney J. Watts, all of Pittsburgh, Pa., for bankrupt.

THOMSON, District Judge. This is a proceeding by Selz, Schwab & Co. for the reclamation of certain property in the hands of the receiver. Under an involuntary petition in bankruptcy, Perelstine was adjudicated a bankrupt on December 9, 1924, and before the referee, Watson B. Adair, Esq., reclamation proceedings were had. The master heard the testimony, and made an elaborate and carefully prepared report, and found in favor of the petitioner. The facts of the case are not really in controversy, but the receiver excepts to certain conclusions which the master drew therefrom.

By stipulation and agreement of counsel, the merchandise sought to be reclaimed was sold by the receiver, and by another stipulation it was agreed that, in the event of the reclamation, claimant should be held entitled

to recover the sum of $2,661.69, being the actual value of the merchandise sought to be reclaimed, which amount may be recovered from the funds in the hands of the receiver or trustee in bankruptcy.

Selz, Schwab & Co., which we will refer to as the claimant, was engaged in the wholesale boot and shoe business, and had been doing business with Perelstine for perhaps 10 years, during which time Perelstine gave each year a financial statement to the mercantile agencies. In January, 1924, one Robert Hoegner, credit manager for claimant, called upon Perelstine for his financial statement, and the latter referred him to R. G. Dun & Co., to whom such financial statement had been made. Claimant was a regular subscriber of Dun & Co., and, on request for a report on Perelstine, received from Dun & Co. a copy of the financial statement which had been signed by Perelstine on January 14, 1924. Claimant, in reliance on the truthfulness of the financial statement, sold and delivered to Perelstine, between the dates of January 14th and shortly prior to the filing of the petition in bankruptcy, several thousand dollars' worth of merchandise on credit, and the said financial statement was a material inducement to the sale and delivery of the said merchandise. There can be no question, and as found by the master, that the financial statement was materially false in important particulars, especially as to his liabilities.

The bankrupt gave signed statements of his financial condition as of January 1, 1924, containing the same figures as were shown in the statement given to Dun & Co., to the Washington Trust Company, on January 14, 1924, to the Marine National Bank, a creditor, on May 17, 1924, and to the Bradstreet Company on September 9, 1924; but it does not appear that claimant knew of these other statements until after the bankruptcy.

The statement was not true, as found by the master, in three particulars: (1) The amount owing for merchandise was about $5,000 more than shown. (2) The loans from banks were $43,000; that is, $25,000 more than shown. And (3) bankrupt owed Sullivan & Gross $6,144. It does not appear whether or not this was a mortgage on the real estate. It thus appears that the bankrupt owed at least $32,000, perhaps $36,000, more than he reported. On January 1, 1924, the bankrupt was indebted to the claimant in the sum of $6,772.18, and when the report was received from Dun & Co., on January 29, 1924, he owed claimant $5,515.33. Between that date and the bankruptcy, petitioner sold bankrupt goods on credit in the amount of $8,953.28. During the same period bankrupt paid petitioner $10,283.06 in cash, and now owes petitioner $3,826.05, which is less than the amount owing on January 1st. The merchandise which petitioner seeks to reclaim, and which the receiver sold, and the value of which he now seeks to recover, was sold to the bankrupt in August, September, and October, 1924, all of which was in the Homestead and Braddock avenue stores at the time of the bankruptcy, and has not been paid for.

The master finds that the bankrupt knew that Dun & Co. and Bradstreet were commercial agencies, engaged in giving credit ratings, which were intended for the information of customers of these agencies for guidance in selling him merchandise on credit, and that when he gave the statement to Dun & Co., and referred the claimant to that agency, he intended that the statement should be relied upon by claimant in determining whether or not petitioner would sell the bankrupt goods on credit.

From the facts in controversy, the master finds that the statement which was thus given, and upon which claimant relied, was grossly erroneous; that in preparing the statement he made no effort to ascertain the correct amount owing to the banks, and that he issued the financial statement, either with knowledge that it was untrue, or with reckless disregard of its truth or untruth. He also finds that, from the fact that financial statements had been given for 8 or 10 years by the bankrupt to the commercial agencies, the bankrupt intended that such statement should be relied upon throughout the year and until the arrival of the usual time for issuing a new annual statement.

The master finds that claimant relied primarily upon the truth of the financial statement. The statement showed, excluding real estate and mortgage thereon, assets of about three times the liabilities, and a surplus of assets above liabilities of more than twice the debts. If the true figures had been given, they would have shown assets of less than 1½ times the liabilities and a surplus of less than one-half the debts. While it is true, as found by the master, that a true statement would not have shown insolvency, it would have shown a much smaller margin of safety than was shown by the statement. The master also finds that it is highly probable that, if the liabilities had been shown as $60,000, as against assets of only $88,000, of which $11,000 was represented by fixtures, petitioner would not have supplied goods to open a new store in

September, if, indeed, it would have sold him goods on credit at all.

The master finds, under the circumstances, that the petitioner obtained the goods by an artifice; that is, an untrue financial statement, intended and fitted to deceive, and which did deceive, the claimant, and led him to sell to bankrupt on credit goods, for which the bankrupt has become unable to pay; this inability to pay being caused or aggravated by the debts which the bankrupt concealed in his financial statement.

[1] I agree with the learned master that it is not necessary that petitioner show that the bankrupt, in buying the goods, had an intention not to pay. While it is true in Pennsylvania that the purchase of goods on credit, with an intention not to pay for them, is not, in the absence of deceit or artifice, deemed such a fraud as will support a rescission, as appears in Smith v. Smith, 21 Pa. 367, 60 Am. Dec. 51, yet here, as the master finds, there was positive misrepresentation which induced the credit.

Counsel for the trustee seems to rely upon those cases where reclamation has been denied, even though claimant was deceived, where there was an absence of an overt act of fraud, and also that claimant in this case has neither proven insolvency nor an intention not to pay for the merchandise at the time it was purchased. I am of opinion that neither of the lines of cases referred to apply to this case. Those referred to as requiring the proof of an overt act of fraud do not apply, inasmuch as it was clearly proven that in this case an overt act of fraud was perpetrated upon the claimant as found by the master. And those cases referred to as supporting the proposition that an intention not to pay must be shown is well answered by the master wherein he says:

"It is not necessary that petitioner show that bankrupt, in buying the goods, had an intention not to pay. The trustee urges that it is necessary to show such an intention, and cites In re Levi & Picard (D. C.) 155 F. 262, 17 Am. Bankr. Rep. 430, which supports his contention, but which was disapproved by the Circuit Courts of Appeals of the Second Circuit in Re New York Commercial Co., 228 F. 120."

The Circuit Court of Appeals draws the line of distinction. The court held, in referring to the error in which the District Court had fallen:

"It results from confusing rescission in cases where there has been no representation whatever with cases where a false representation has been made. In the former, it is necessary to prove the insolvent buyer's intent not to pay when he contracts for the goods. In the latter, the ground of rescission is complete whenever the buyer has made a material misrepresentation which is relied on, whether he made it fraudulently or not, there being no requirement of proof that he did not intend to pay."

[2,3] It has also been established that it is not necessary, to support a rescission, that proof of insolvency be established. In re Bendall (D. C.) 183 F. 816; Newell v. Randall, 32 Minn. 171, 19 N. W. 972, 50 Am. Rep. 562, and other cases. It is also claimed by counsel for trustee that, under the amendment of 1910 to the Bankruptcy Act (Comp. St. § 9586 et seq.), the trustee stands in the position of a levying creditor, and that as to these the claimant cannot assert its title. It has been held by the Supreme Court, and is the established law, that the rights of the parties in case of bankruptcy are to be determined by their status at the time the petition in bankruptcy was filed. Whatever their rights were then as against the bankrupt can be asserted against his trustee.

Being fully in accord with the master's findings of fact under the evidence, and the conclusions which he draws therefrom, and the legal principles which he has applied, the report and opinion of the learned referee is therefore affirmed.