A. S. COWLEY

*vs.*

WM. F. DAVIDSON. ·

In an action for the breach of a contract to transport a certain lot of wheat from one place to another, and deliver it at the latter to M. & A. on or before a certain day, or to deliver other wheat in its stead at such time and place, the usual dangers of river navigation and fire being the only exceptions in the contract, the fact that a river constituting a portion of a route of transportation between said points was rendered unnavigable for any water craft until after the day limited for the delivery of the wheat by reason of low water, is not a defence; it is not excepted in the contract, nor did it render the performance of the contract impossible; and evidence tending to show such fact is immaterial.

Where time is of the essence of an unconditional contract, the agreement

Cowley v. Davidson.

must be performed within the time specified, or there is a breach of the contract; and an offer at a subsequent time to do the act required by the contract is immaterial.

In an action for the breach of a contract to transport wheat from Ottawa to Milwaukee, and deliver it at the latter place on or before the 20th of May, 1864, or to deliver other wheat in its stead, no evidence whatever being given of an *unconditional* offer by the defendant at any time on or prior to the 20th of May, 1864, to perform this contract specifically; but evidence having been introduced of a *conditional* offer by the defendant to perform the contract, requiring the plaintiff to give the defendant a written guaranty that he had the amount of wheat at Ottawa, and that it should pass inspection as No. 1 wheat in Milwaukee; it was not error in the Court to charge that the defendant had no right to require the plaintiff to guarantee that the wheat at Ottawa should pass inspection at Milwaukee as No. 1 wheat; and to refuse to charge, *without this qualification*, that if the jury believe from the evidence that the defendant on or about the 18th of May, 1864, or at any time prior to, or on the 20th of May, 1864, offered to perform the contract, they must find for the defendant.

Under a contract by which the plaintiff was to deliver to the defendant certain wheat at a particular place, upon reasonable notice, and the defendant was to transport the wheat, and deliver it at Milwaukee at a certain time, or deliver other No. 1 wheat in its place, the defendant cannot require the plaintiff to deliver to him wheat receipts, or to guarantee that such receipts called for No. 1 wheat.

If wheat receipts form part of a subsequent agreement between parties to a written contract, by which the terms of the original contract are modified, they are the best evidence, and parol evidence of their contents is not admissible.

When the defendant contracts to transport and convey wheat, which is to be delivered to him by the plaintiff at a certain place upon reasonable notice of the defendant's readiness to receive the same, it is not incumbent on the plaintiff to prove an offer, in the first instance, to deliver the wheat to the defendant.

When the case as presented in the paper-book does not contain all the testimony on the trial, the presumption is that there was testimony on all points sufficient to sustain the verdict.

In an action to recover damages for the breach of a contract to transport and carry goods, and deliver them at a specified time and place, at a specific rate, where the goods have never been taken into the possession of the carrier, but remain in the possession of the plaintiff, the measure of the plain-

tiff's damages for the breach of the contract is the difference between the value of the goods at the time and place they were to be delivered by the defendant, and the value of goods of the same quality, at the same time, at the place they were to have been received by the defendant for transportation, with the costs of transportation from the place of shipment to the place of delivery under the contract, at the rate specified therein, added; together with interest on such difference from the time the goods were to have been delivered by the defendants.

The plaintiff and defendant entered into a contract in April, 1864, whereby defendant agreed to transport from Ottawa, Minn., 5,000 bushels of wheat, and deliver the same to Miles & Armour at Milwaukee, Wis., and was to receive therefor, from the plaintiff, at the rate of 33 cents per bushel; "said wheat to be delivered at Milwaukee on or before the 20th day of May, 1864; the said Cowley to deliver said wheat to said Davidson on the bank of the river at Ottawa aforesaid, at the usual place of shipping there, and in the usual manner, upon reasonable notice of the said Davidson's readiness to receive the same." It was further agreed that in case of failure of said Davidson to deliver said wheat, or any part thereof, at the time and place specified, said Davidson should deliver to Miles & Armour, at said time and place, and said Cowley should accept, if so delivered, the said amount of No. 1 wheat, or a sufficient quantity of No. 1 wheat to make up the deficiency in the amount so to be delivered. The plaintiff brought this action in the Ramsey County District Court to recover damages for a breach of this contract. The first defence set up in the answer is, that the unprecedented low water in the Minnesota river, during the whole season of navigation in 1864, prevented the performance of the contract; the second, that on or about the 18th day of May, 1864, defendant offered to deliver the said amount of No. 1 wheat at Milwaukee if plaintiff would accept it, and undertake to deliver an equal

Cowley v. Davidson.

amount of No. 1 wheat to defendant at Ottawa, and that plaintiff refused; the third, an offer to transport the wheat, on the opening of navigation, in the spring of 1865, and refusal of plaintiff to deliver the wheat at Ottawa. The cause was tried before a jury. On the trial after the plaintiff had introduced his proofs and [rested, the defendant was called as a witness in his own behalf, and, after testifying to the making of the contract, that he was engaged in the carrying business, especially on the Mississippi and Minnesota Rivers, was asked the following question by his counsel: "Do you know the condition of the Minnesota River as to navigability on and after the 15th day of April, 1864, during the season of that year, between Ottawa and St. Paul, and, if so, state what that condition was?" to which the plaintiff objected as incompetent and immaterial. The objection was sustained, and defendant's counsel excepted. Defendant, by his counsel, then offered to prove "that the navigation of the Minnesota River, from Ottawa down, on and after the 15th day of April, 1864, and until the opening of navigation in the spring of 1865, was impracticable, by reason of the low stage of water in said river, and for that reason, it was impossible for the defendant to transport the wheat in controversy, after the 15th day of April, 1864, during the season and before the opening of navigation in 1865." Plaintiff objected to such evidence as incompetent and immaterial. The Court sustained the objection, and defendant excepted.

Defendant further offered to prove "that at and upon the opening of navigation in the Minnesota river in the spring of 1865, the defendant offered to the plaintiff to receive the said wheat at Ottawa, and transport it, and deliver it at Milwaukee, pursuant to the terms of the contract alleged in the complaint, and that plaintiff then refused to deliver to defendant said wheat." The plaintiff objected, and the Court decided

that such evidence should not be received, and defendant excepted to the ruling. The witness then testified: " I had an interview with the plaintiff Cowley in St. Paul about the 18th of May, 1864, * * * respecting supplying him with the wheat at Milwaukee. I then offered to deliver to Miles & Armour at Milwaukee, for plaintiff, 5000 bushels No. 1 wheat, on or before the 20th of May, 1864, or at once if he wished. I made arrangements with Miles & Armour by telegraph to do this. * * * Cowley, at the time of the interview, had wheat receipts issued by warehousemen, calling for wheat at Ottawa, which he proposed to deliver to me." Defendant's counsel then asked the witness the following question: "What kind of wheat did these receipts which Cowley proposed to turn over to you call for?" The question was objected to by plaintiff as incompetent and immaterial. The objection was sustained, and defendant excepted. Defendant's counsel then offered to prove " that the receipts which Cowley proposed to transfer to the defendant, by way of delivering to him the wheat at Ottawa, did not call for No. 1 wheat, but simply for merchantable wheat." The evidence, being objected to by plaintiff, was rejected by the Court, and defendant's counsel excepted to the ruling. On his cross-examination the witness among other things says: " At the interview referred to I required of Cowley that the wheat, at Ottawa, should be equal, in amount and quality, to the wheat I delivered him at Milwaukee. Cowley was to turn over the wheat receipts which he held, to me, and guarantee the wheat represented by them to be No. 1, and of the amount called for. I would not deliver the wheat to Miles & Armour for him unless he gave me a written guaranty that he had the amount of wheat at Ottawa, and as good as that I was to deliver him at Milwaukee. * * * Our arrangement was to be in writing. Capt. Rhodes was to draw it up. It might have been my require-

Cowley v. Davidson.

ment that the wheat I was to get from him should pass in-
spection as No. 1 in Milwaukee ; it probably was.   The wri-
ting drawn by Mr. Rhodes provided that the wheat at Otta-
wa should pass inspection as No. 1 wheat at Milwaukee. ".
" He declined to give the guaranty, and the matter dropped."
At the close of the testimony the defendant's counsel request-
ed the Court to charge, among other things, " that, if the
jury believe from the evidence that the defendant, on or about
the 18th day of May, A.D. 1864, or at any time prior to or
on the 20th day of May, 1864, offered to deliver to Miles &
Armour, at Milwaukee, on or before said 20th day of May,
A. D. 1864, for account of said plaintiff, 5000 bushels of No.
1 wheat, they must find for the defendant."   This instruction
the Court refused, as requested, but gave it with the quali-
fication " that defendant had no right to require the plain-
tiff to guarantee that the wheat at Ottawa should pass inspec-
tion at Milwaukee as No. 1 wheat," and defendant's counsel
excepted.   The plaintiff's counsel requested the Court to give
several instructions to the jury, the 2d and 3d of which were
as follows :

"2d.  A proposition or offer made by defendant to plaintiff
at St. Paul, Minnesota, to deliver by defendant to Miles & Ar-
mour, at Milwaukee, coupled with a condition requiring the
plaintiff to guarantee in writing that the wheat at Ottawa
would pass inspection as No. 1 wheat at Milwaukee, on being
shipped by defendant, or any other condition not required in
the contract, does not excuse the defendant from his obliga-
tion to convey and deliver the wheat mentioned in the con-
tract.

3d.   The rule of damage in this case is the difference be-
tween the value of No. 1 wheat at Milwaukee, on said 20th
day of May, 1864, and the price of wheat, of same quality,
at same time, in said Ottawa, with costs of transportation,

from said Ottawa to said Milwaukee, at the rate mentioned in the contract added, together with interest thereon from May 20th, 1864."

The Court gave these instructions to the jury, and the defendant excepted. The jury found a verdict for plaintiff for $1995.50. Judgment was entered, and the defendant appeals therefrom to this Court.

LORENZO ALLIS for Appellant.

GASTON & LEWIS for Respondent.

*By the Court*—McMILLAN, J.—This is an action brought to recover damages for a breach of a contract to ship and transport certain wheat from Ottawa, in Minnesota, to Milwaukee. The agreement set up in the complaint is as follows:

"This agreement made this fifteenth day of April, A.D. 1864, between William F. Davidson of the first part, and Archibald S. Cowley, of the city of St. Paul, Minn., of the second part, witnesseth: That the said Davidson hereby covenants and agrees to ship, transport and carry from Ottawa, LeSueur county, Minnesota, to Milwaukee, in the State of Wisconsin, five thousand bushels of wheat, to be delivered at Milwaukee to Miles & Armour; and for such shipping, transporting and delivering, to receive at the rate of thirty-three cents per bushel; to be conveyed in sacks, if sacks shall be furnished by said Cowley; but so much of said wheat as shall not be furnished in sacks the said Davidson shall convey in bulk, or in sacks to be furnished by himself, and for so much as he shall convey in sacks furnished by himself he shall receive at the rate of one cent per bushel additional. Said wheat to be delivered at Milwaukee on or before the 20th of May, A.D. 1864. The said Cowley to deliver said wheat to said David-

Cowley v. Davidson.

son on the bank of the river at Ottawa aforesaid, at the usual place of shipping there, and in the usual manner, upon reasonable notice of his, said Davidson's, readiness to receive the same. The sacks belonging to said Cowley to be returned to him at St. Paul. It is mutually agreed that in case of failure of said Davidson to deliver said wheat, or any part thereof, at the time and place hereinbefore particularly specified, the said Davidson will deliver to said Miles & Armour, at said time and place, and said Cowley will accept if so delivered within said time, the said amount of No. 1 wheat, or a sufficient quantity of No. 1 wheat to make up the deficiency in the amount so to be delivered.

In witness whereof the said parties have hereto subscribed their names the day and year first above written.

The usual dangers of river navigation and fire excepted to the above contract.

Wm. F. Davidson.<br>A. S. Cowley."

" If said Cowley shall require the above mentioned wheat to be delivered to other parties in Milwaukee than the above mentioned, he has the privilege to change the consignment, without additional for freight, and to be delivered on same conditions as above written.

Wm. F. Davidson.<br>A. S. Cowley."

On the trial of the cause the plaintiff having offered his proofs and rested his case, the defendant having been called as a witness in his own behalf, testified to the making of the contract with Cowley, and that he was at the time engaged in the carrying business by water, more especially on the Mississippi and Minnesota rivers. The defendant's counsel then asked the witness the following question:

" Do you know the condition of the Minnesota river as to

navigability on and after the 15th day of April, A. D. 1864, during the season of that year between Ottawa and St. Paul, and if so, state what such condition was?" To which the plaintiff objected as incompetent and immaterial. The objection was sustained and defendant excepted.

This action is based upon an express executory contract of the defendant to transport this wheat; the defense is, that the unprecedented low water in the Minnesota river between Ottawa and the mouth of the river prevented the performance of the contract. There is no such exception in the contract.

The rule well settled is, that if a party enter into an absolute contract, without qualification or exception, he must abide by the contract, and either do the act or pay the damages; the performance is not excused by an inevitable accident or other contingency, although not foreseen by, or within the control of the party. *Chitty on Contr.* 734; *Beebe vs. Johnson,* 19 *Wend.,* 502; *Harmony vs. Bingham,* 12 *N. Y.* 99.

The only exceptions in this contract are the usual dangers of river navigation and fire; the defense is not that the dangers of navigation rendered it impossible or impracticable to perform the contract, but that the low state of water rendered the stream unnavigable for any water craft during the season. There must be navigation before there can exist any dangers of navigation; the want of navigation is not excepted. As the contract in this case was to transport the wheat to, and deliver it at Milwaukee at the time specified, or deliver other No. 1 wheat in its stead at that time and place, although the river was unnavigable, it did not render the contract impossible of performance. The question was therefore immaterial, and the objection was properly sustained.

The same principle will exclude the further offer of the defendant to prove " that the navigation of the Minnesota river from Ottawa down, on and after the 15th day of April, 1864,

and until the opening of navigation in the spring of 1865, was impracticable by reason of the low stage of water in said river, and that for that reason it was impossible for the defendant to transport the wheat in controversy on or after the 15th day of April, 1864, during the season and before the opening of navigation in 1865."

The defendant upon the trial further offered to prove "that at and upon the opening of navigation on the Minnesota river in the spring of 1865, the defendant offered to the plaintiff to receive the said wheat at Ottawa, and transport it and deliver it at Milwaukee pursuant to the terms of the contract alleged in the complaint, and that the plaintiff then refused to deliver the defendant the said wheat"; to which the plaintiff's counsel objected, and the objection was sustained by the Court. There is an express provision in this contract as to the time within which the transportation shall be performed, and the wheat delivered at Milwaukee, with an alternative that if the wheat is not delivered at Milwaukee within the time specified, namely, on or before the 20th day of May, 1864, other wheat shall be delivered as specified therein. Time is manifestly of the essence of this contract; the agreement must be performed within the time specified, or it cannot be performed at all. The circumstances which prevented the transportation of the wheat within the time specified in the contract did not excuse the defendant, or relieve him from liability, neither did it suspend the performance of the contract. The failure to perform at the time specified in the contract was a breach of the contract, and the offer to transport the wheat the next spring was immaterial.

The question propounded to the witness Davidson: "What kind of wheat did these receipts which Cowley proposed to turn over to you call for?" and also the offer of defendant's counsel to prove "that the receipts which Cowley

proposed to transfer to the defendant, by way of delivering to him the wheat at Ottawa, did not call for No. 1 wheat, but simply for merchantable wheat," were properly rejected.

It appears from the testimony of Davidson himself, that the interview had with the plaintiff about the 18th of May, 1864, did not result in any agreement between the parties; the contract was therefore unaffected by it, and the negotiations were immaterial.

The wheat receipts had nothing to do with the contract. The plaintiff was bound to deliver wheat at Ottawa, not wheat receipts at St. Paul. If the defendant saw proper to receive wheat receipts as a delivery of the wheat under the contract, he could do so, but he could not require the plaintiff to deliver him receipts at St. Paul, or elsewhere, or to guarantee that the receipts called for No. 1 wheat. Again, if these receipts were material at all, they were material as forming part of a subsequent agreement between the parties, by which the terms of the original contract were modified; they were then as directly involved in the issue as the contract itself, and between the same parties; they were therefore the best evidence of their terms, and their contents could not be proved by parol.

The defendant's counsel requested the Court to charge, " that if the jury believe from the evidence that the defendant on or about the 18th of May, A. D. 1864, or at any time prior to or on the 20th day of May, 1864, offered to deliver to Miles and Armour, at Milwaukee, on or before said 20th day of May, A. D. 1864, for account of said plaintiff, 5000 bushels of No. 1 wheat, they must find for the defendant." Which instruction the Court refused to give as above, but gave it with the qualification " that defendant had no right to require the plaintiff to guarantee that the wheat at Ottawa should pass inspection at Milwaukee as No. 1 wheat."

The only testimony relating to an offer to deliver wheat to Miles & Armour is that of the defendant himself, who states that he had an interview with the plaintiff in St. Paul about the 18th of May, 1864, a little before the time named in the contract for the delivery of the wheat at Milwaukee; respecting supplying him with the wheat at Milwaukee, he says: " I then offered to deliver to Miles & Armour, at Milwaukee, for plaintiff, 5,000 bushels of No. 1 wheat on or before the 20th day of May, A. D.1864, or at once if he wished. I made arrangements with Miles & Armour by telegraph to do this." On his cross-examination he says: " At the interview referred to I required of Cowley that the wheat at Ottawa should be equal in amount and quality to the wheat I delivered him at Milwaukee; Cowley was to turn over the wheat receipts which he held to me, and guarantee the wheat represented by them to be No. 1, and of the amount called for. I would not deliver the wheat to Miles & Armour for him, unless he gave me a written guaranty that he had the amount of wheat at Ottawa, and as good as that I was to deliver him at Milwaukee." * * * " It might have been my requirement that the wheat I was to get from him should pass inspection as No. 1 wheat in Milwaukee. I think it probably was. The writing drawn by Mr. Rhodes provided that the wheat at Ottawa should pass inspection as No. 1 wheat at Milwaukee." " Cowley declined to give the guaranty, and the matter dropped." The instruction desired was properly refused, because there was no testimony whatever of an unqualified offer such as that embraced therein, and the condition stated in the charge as given was expressly attached to the only offer of delivering, which appears in the testimony. As we have already observed, the defendant had no right to attach this condition to his offer; there was no error therefore in the refusal of the Court to charge as desired, or in giving the charge

as modified, although, perhaps, the whole testimony was immaterial.

The views we have expressed also dispose of the instruction given by the Court in accordance with the second request submitted by the plaintiff.

The Court charged the jury that " the rule of damages in this case is the difference between the value of No. 1 wheat at Milwaukee, on said 20th day of May, 1864, and the price of wheat, of same quality, at same time, in said Ottawa, with costs of transportation from said Ottawa to said Milwaukee, at the rate mentioned in the contract added, together with interest thereon from May 20, 1864." This was the correct rule of damages in this case. The wheat in question was to have been received and taken by the defendant at Ottawa, and carried to and delivered at Milwaukee, for the compensation specified in the contract, on or before the 20th day of May, 1864, or other No. 1 wheat was to be delivered at that time and place in its stead.

No part of the contract was ever fulfilled by the defendant ; he did not receive the goods under the contract ; they still remain in the possession of the plaintiff, so that the wheat at Ottawa was not lost to the plaintiff ; but the breach of the contract was complete by the non-delivery of the Ottawa wheat, or the alternative wheat, at Milwaukee on the 20th of May ; then the damages resulted, if any. What were they ? The wheat was not lost, but it was at Ottawa, and not at Milwaukee, as it should have been ; if, therefore, it was worth more at Milwaukee than Ottawa at that time, the plaintiff, if the contract had been performed, would have had that advantage; and because the contract was not performed he lost it ; and as, if the contract had been performed, the contract price for carrying the wheat would have been paid by the plaintiff to the defendant, that must also be deducted in determining the

Cowley v. Davidson.

loss. The transaction to which the contract related was complete, and the rights of the parties under such contract were determined on the 20th of May. The plaintiff must wait till the defendant made default, and when that occurred he was not bound, for the purpose of relieving the defendant from the consequences of his default, or retrieving the loss on his own part, to carry the wheat subsequently, from Ottawa to Milwaukee, or any other place. The fact that he might have made more out of the wheat at a subsequent time by sending it to Milwaukee, cannot affect his rights as against the defendant. If so, he might be required to keep it till a more favorable season, and to send it to another market, that greater profit should result from it, and the defendant have the benefit of the enhanced price. Upon principle, we think, the charge was clearly right, and it is sustained by authority. 3 *Pars. on Contr.* (5th Ed.), *p.* 193; *Brackett vs. McNair*, 14 *Johns*, 170; *O'Conner vs. Foster*, 10 *Watts*, 418.

The case as presented in the paper-book does not contain all the testimony on the trial; the presumption is, therefore, that there was testimony on all points sufficient to sustain the verdict; and it appears from the paper-book that the plaintiff testified among other things that very soon after the commencement of this action he sold and transferred all the said wheat which he had *at Ottawa to one E. S. Edgerton.* Under the contract, and the circumstances in this case, it was not incumbent on the plaintiff to prove an offer in the first instance to deliver the wheat to defendant. We see no error in the proceedings; the judgment should be affirmed.