## LUCY KERR v. LUMAN C. SIMONS.[1]

February 19, 1926.

No. 25,045.

**Misrepresentation by defendant in sale of bonds to plaintiff.**

1. The finding of misrepresentation in the sale of bonds secured by a trust deed running to defendant, in that defendant stated to plaintiff that he had signed the bonds and stood back of them, is sustained by the evidence.

**One who acts for undisclosed principal binds himself.**

2. The finding was justified that the sale was by defendant to plaintiff and, so far as plaintiff was concerned, she could hold defendant personally, even though the bonds were owned by the bank of which he was president, for he at no time disclosed that he acted for the bank. One who acts for an undisclosed principal binds himself.

**Rescission maintainable against one who contracts for undisclosed principal.**

3. An action for rescission may be maintained against one who has made a contract for an undisclosed principal.

Agency, 2 C. J. pp. 816 n. 23; 953 n. 80.
Appeal and Error, 4 C. J. p. 900 n. 98.
Bonds, 9 C. J. pp. 61 n. 73; 123 n. 91.
Fraud, 26 C. J. p. 1158 n. 62.
Sales, 35 Cyc. p. 157 n. 93.

Action in the district court for Ramsey county to rescind sale of two bonds. The case was tried before R. D. O'Brien, J., who or-

[1]Reported in 207 N. W. 305.

dered judgment in favor of plaintiff.   Defendant appealed from an order denying his motion for a new trial.   Affirmed.

*Ambrose Tighe,* for appellant.

*Boyesen, Otis, Brill & Faricy,* for respondent.

HOLT, J.

Action to rescind the sale of two bonds secured by a trust deed. Findings were made in favor of plaintiff, and defendant appeals from the order refusing a new trial.

As to these facts there is no dispute:   One Rodgers negotiated a loan for $45,000 from the Twin City State Bank, now a national bank, through defendant, its president.   The loan was to be evidenced by bonds issued by Rodgers and wife payable to bearer, and drawing 6 per cent interest.   To secure the bonds, which were dated December 15, 1919, Rodgers and wife executed to defendant as trustee a deed to a 640-acre improved farm in Norman county, Minnesota.   This deed contained this provision:   "It is understood and agreed by the parties hereto that any one or more or all of said bonds may be purchased by said Luman C. Simons in his capacity as Trustee under this deed of trust or any capacity whatsoever, whether under this trust deed or otherwise."   The bonds were to be delivered to defendant and were not to become obligatory until defendant as trustee authenticated the same by indorsing thereon his certificate.   Plaintiff was a customer of the bank, and had a speaking acquaintance with defendant.   She desired to invest in securities bringing more of a return than did some certificates of deposit she had in defendant's bank, and asked his advice.   He told her the safest investment was government bonds and next to that farm mortgages, and told her of these bonds secured by the Rodgers' farm.   When she again interviewed defendant, he sold her two of the bonds of $1,000 each for $1,890.   It appears that it cost Rodgers ten per cent for negotiating the loan, he receiving $40,500 from the proceeds.   So far there is no conflict in the testimony.

The misrepresentations on which the action is founded are thus stated by plaintiff:   "He said [the farm] would sell today for $125 an acre.   Aside from that, he said, 'I have personally signed each

one of these bonds and I personally stand back of them.'" And again: "He said it was highly improved Minnesota farm, well worth or away beyond what the mortgage value was. He put it at $125 an acre and repeated that he stood back of the bonds and had personally signed them. I said, 'do you consider that a good investment?' and he said, 'Absolutely.' It was on his standing back of them that I concluded to take the bonds entirely, I did not investigate at all." Defendant contended that he did not represent the farm to be worth $125 an acre, and that, if he did, it was true. Concerning ownership plaintiff was asked: "Did he tell you the bank owned them? A. No, the bank was not mentioned. Q. Did he say who owned [them]? A. No, just said he had them." As to the same matter defendant testified: Q. "Did anything come up as to the ownership of these bonds? Did you state anything about the bank having invested its money in them? A. Yes, I did. I told her 'Here is an issue of bonds we ourselves have invested our money in.' Was that about all? Practically all."

The court found in substance that the representation in regard to the value of the farm securing the bonds was untrue; that it was not worth $45,000 when plaintiff bought the bonds; that the bonds were not then worth $1,900; that defendant had not personally signed the bonds and did not stand back of them. It was also found that defendant sold the bonds to plaintiff, notwithstanding the allegation in the amended complaint that he was not the owner, the ownership at the time of the sale having been voluntarily litigated.

The above findings, and others of no controlling effect, are challenged by many assignments of error. But, as we understood counsel on the oral argument, the only ones which appellant has any hope of successfully assailing are: The finding that the farm was worth less than $45,000 when the bonds were sold, and the one that the bonds were owned by defendant. As we view the appeal, the finding of the representation of defendant's individual responsibility backing the bonds would lead to an affirmance, unless there is a legal obstacle to rescission in the fact that the bonds may not

actually have belonged to defendant when sold. Therefore, the finding that the farm was worth less than $45,000 becomes immaterial to the result and need not be scrutinized to any great extent. In extenuation of defendant's representation as to the adequacy of the securities, it may be said that in 1920 experienced men erred greatly in their estimate of land values.

The evidence we think warranted the finding that defendant represented that he had signed the bonds and personally backed them. On that matter, the most that can be claimed for defendant is that his and plaintiff's testimony conflicted. In that situation the finding must stand. Plaintiff was a woman not experienced in business. Defendant was her banker, and had been such for some time. It is readily seen that she would place much reliance upon the assertion that he stood back of the bonds. To people in the ordinary walks of life, such as plaintiff, this would mean that he had signed the bonds so as to make him personally responsible to the purchaser for their payment. Defendant's name was written on the back of the bonds; but that created no legal liability since it was simply signed under a certificate to the effect that they were secured by the trust deed. Although this was plain to a lawyer, the average bank customer would not know it. The court could well conclude that plaintiff placed more reliance on the representation that defendant had signed the bonds and stood back of them than upon the representation as to the value of the farm securing them.

Appellant contends the proof to be conclusive that the bank and not he was the owner of the bonds, and the court should have so found. Consequently, it is argued, the sale was not his, and the action for rescission could not lie against him. There is evidence tending to support a finding that defendant was the owner of the two bonds involved. On their face there is nothing showing ownership in the bank. The inference is to the contrary from the caption of the bonds stating that they were negotiated by the bank. Ordinarily banks do not make such large loans to a customer, and are not in the mortgage business. The bank was a national bank

at the time the bonds were bought by plaintiff, and by U. S. Comp. St. 1916, § 9674, or by the Act of June 21, 1917, amending the Federal Reserve Act of December 21, 1913, as amended, it was not permitted to invest in bonds of that sort. The trust deed, or mortgage, nowhere indicates the bank to be the beneficiary or mortgagee. Delivery of the bonds was to defendant. He could buy and own them as freely as any other person. Plaintiff testified that defendant took them out of his desk and delivered them to her when she made the purchase.

But even were it conceded that the bank, and not defendant, was the actual owner of the bonds, that fact would not preclude a rescission and the relief that goes with rescission. The transaction on this record may be viewed as one between plaintiff and defendant in his individual capacity. The court so found. That finding is amply sustained. He did not inform plaintiff that he was representing the bank, or that the bonds were the property of the bank, or that he acted in the capacity of agent. From appearances and from the representations made by defendant, she was warranted in concluding that the bonds were his property which he transferred to her. An agent contracting in his own name cannot escape liability, when sued on the contract, by pleading that he acted for another. This was an oral contract and the evidence justified a finding that defendant made it in his own behalf, he not disclosing or pretending to act for the bank. One acting for an undisclosed principal binds himself. As said in Amans v. Campbell, 70 Minn. 493, 73 N. W. 506, 68 Am. St. 547, where the defendant sought to evade personal liability on a contract on the plea that he had made it as the agent of his wife:

"But, assuming that in fact he was merely agent for his wife, the case was, upon the evidence, one for the application of the rule that a person acting as agent for another will be personally responsible if, at the time of making the contract in his principal's behalf, he fails to disclose the fact of his agency; that by reason of such failure he becomes subject to all the liabilities, express or implied, created by the contract, in the same manner as if he were the principal in interest."

Welch y. Goodwin, 123 Mass. 71; McClure v. Central Trust Co. 165 N. Y. 108, 58 N. E. 777, 53 L. R. A. 153; Baldwin v. Leonard, 39 Vt. 260, 94 Am. Dec. 324; Gordon v. Brinton, 55 Wash. 568, 104 Pac. 832, 133 Am. St. 1038. The remedies upon such a contract must necessarily be the same as upon any other contract, one of such remedies being an action for rescission. The party who contracted in ignorance of the agency may have the additional right of electing to hold the undisclosed principal. Gay v. Kelley, 109 Minn. 101, 123 N. W. 295, 26 L. R. A. (N. S.) 742, but plaintiff has not attempted to hold any other than the person with whom she dealt.

The court also found defendant to stand in a fiduciary relation to plaintiff; that defects existed in the title of Rodgers; that defendant had not acquired some collateral securities; and that full disclosure thereof was not made to plaintiff. These matters become unimportant in view of the controlling effect which must be given to the misrepresentation that defendant had obligated himself on the bonds and stood back of them, and that the sale was his, he not having disclosed that he acted as agent for the bank.

The judgment is affirmed.