VIRGINIA S. KLEIN v. FIRST EDINA NATIONAL BANK.

196 N. W. 2d 619.

April 7, 1972—Nos. 42956, 43023.

*Haverstock, Gray, Plant, Mooty & Anderson, James S. Simonson,* and *Edwin C. Carpenter,* for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Jan D. Stuurmans,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

PER CURIAM.

Plaintiff, Virginia S. Klein, who by this action seeks to recover stock which she pledged to defendant, First Edina National Bank, as security for a loan to a third party,[1] appeals from a judgment entered pursuant to a directed verdict and from an order denying her motion for a new trial.

This appeal presents two main issues for decision: Did plaintiff establish a prima facie case that defendant committed fraud in taking her stock as security for the loan? Did plaintiff establish a prima facie case that defendant agreed to satisfy its loan to the third party from proceeds of the latter's accounts receivable?

In reviewing a directed verdict, all inferences which may be fairly drawn from the evidence must be drawn in favor of the party against whom the verdict was directed. Hippe v. Duluth Brewing & Malting Co. 240 Minn. 100, 59 N. W. 2d 665 (1953).

Viewing the evidence in this light, it appears that, from 1963 on, plaintiff has suffered from acute alcoholism and has been institutionalized on several occasions in the past 8 years for purposes of arrest or cure of this illness. In March 1965 her husband of 24 years divorced her and, shortly thereafter, married his secretary. This marriage was not successful, and within a period of 1 year ending at his death in November 1966, he repeatedly returned to plaintiff and left her again to live with his second wife. The interaction and accumulation of plaintiff's marital and drinking problems had a devastating effect on her. An expert witness testified that a predominant factor in plaintiff's psychological makeup was a need to please and a susceptibility to suggestion.

In January 1966 plaintiff, while having these personal difficulties, began working for Mrs. Florence Schaub, the owner of a small interior decorating business in the Minneapolis area. Plaintiff soon learned that the business was low on working capital, partly because of Mrs. Schaub's inability to collect a number of accounts receivable, particularly that of one William Keye. Becoming increasingly concerned, one day plaintiff, in desperation, told Mrs. Schaub that she owned some shares of stock and volunteered to help her obtain some money.

A short time later, on March 17, 1966, Mrs. Schaub asked plaintiff to accompany her to her bank, First Edina National Bank, which coincidentally was plaintiff's bank. There plaintiff and Mrs. Schaub had a meeting, lasting approximately 5 minutes, with a loan officer, Galen

---

[1] Alternatively, plaintiff seeks damages in an amount equal to the market value of her stock on the date of the pledge.

Schmick. Mrs. Schaub executed a demand note to the bank for $35,000; plaintiff pledged her stock, 952 shares of American Telephone and Telegraph Company stock, to the bank as security for the loan, and also signed, in blank, an assignment of her certificate for the shares and a signature card.

Plaintiff testified that, at the time she pledged her stock and signed the instruments, she did not know certain facts which might have prompted her to act otherwise. She did not know that Mrs. Schaub already owed defendant $9,250 on a loan or that this loan was secured by an automobile and an assignment of the Keye account receivable, then estimated at $50,000. Nor did she know that the bank used $9,250 of the proceeds of the $35,000 loan to Mrs. Schaub to retire an earlier loan, advancing only $25,750 in new money to Mrs. Schaub. Since plaintiff did not know about the preexisting loan and assignment of the Keye account, she of course did not know that the bank intended to release the Keye assignment and to rely entirely on plaintiff's stock for security in order to avoid litigation with Mr. Keye, who had just been elected to the board of directors of an affiliate bank. Finally, plaintiff did not understand the possible consequences of pledging her stock and signing the instruments. To the extent that she thought about what she was doing, she assumed that when the Keye debts were "repaid to Mrs. Schaub," Mrs. Schaub would pay up the loan and she would get her stock back.

It is undisputed that plaintiff did not ask Schmick any questions or otherwise inform him of her alleged lack of understanding concerning the transaction. Indeed, according to her own testimony, she was in a highly emotional state and "didn't give a darn" what she was doing. She signed the documents without reading them. For his part, Mr. Schmick did not ask plaintiff any questions, nor did he counsel or advise her. In his own mind he contemplated that proceeds from the Keye account would provide funds with which Mrs. Schaub would repay the loan.

Because its loan was secure, defendant considered itself under no obligation to keep tabs on Mrs. Schaub's business or the Keye account. By June 1966 the bank knew that Keye had paid his account to Mrs. Schwab in full, but it did not call the loan until 1968. Apparently, during the interim, Mrs. Schaub did not disclose to plaintiff that Keye had paid his account in full.

Upon receipt in 1968 of a notice of foreclosure with respect to her shares of stock pledged to defendant, plaintiff commenced her action against defendant.

1. Obviously, defendant did not misrepresent any material fact inducing plaintiff to pledge her stock; rather, plaintiff's claim of fraud depends upon the theory that defendant's failure to inform plaintiff of all the details of the transaction constituted fraud.

As a general rule, one party to a transaction has no duty to disclose material facts to the other. However, special circumstances may dictate otherwise. For example:

(a) One who speaks must say enough to prevent his words from misleading the other party. Newell v. Randall, 32 Minn. 171, 19 N. W. 972 (1884).

(b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party. March v. Webber, 13 Minn. 99 (109) (1868).

(c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts. See, e. g., Wells-Dickey Trust Co. v. Lien, 164 Minn. 307, 204 N. W. 950 (1925).

The main question for us is whether defendant's relationship to plaintiff was such as to impose on defendant a duty to inform plaintiff of all the details of the transaction. The trial court held that plaintiff failed to make a prima facie showing of such a relationship, and we agree.

Plaintiff had been a customer of defendant for nearly 20 years prior to the date on which she pledged her stock. During that time, alone or jointly with her husband, she had maintained checking and savings accounts and had rented safety deposit boxes. In 1946 plaintiff and her husband had utilized defendant's services in obtaining a real estate mortgage. Plaintiff had also socialized on two or three occasions with the wife of defendant's president. After her divorce, plaintiff continued to bank with defendant, and on two occasions obtained defendant's aid in converting and transferring certain securities.

Plaintiff and Mr. Schmick had not met prior to the transaction, but plaintiff testified that she trusted defendant, and therefore defendant's employee, as she would trust a doctor or lawyer. As plaintiff put it, she would not have signed the instruments in question if someone other than her bankers had put the papers before her to sign. There was no showing, however, that Mr. Schmick knew that plaintiff was an alcoholic or that she placed such great trust in him and lacked good judgment in business matters. He observed no need to counsel her as to the transaction in question.

We have not found any Minnesota cases exactly in point. See, however, Hassman v. First State Bank, 183 Minn. 453, 236 N. W. 921 (1931);

Kerr v. Simons, 166 Minn. 195, 207 N. W. 305 (1926); Wells-Dickey Trust Co. v. Lien, *supra;* Picha v. Central Metropolitan Bank, 161 Minn. 211, 201 N. W. 315, 203 N. W. 617 (1924). None of these cases supports the proposition that when a bank transacts business with a depositor, the bank necessarily stands in a confidential relation to the depositor compelling it to ensure that its depositor has knowledge of all material facts relating to the business transaction.

We believe the correct rule to be that when a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction—including the bank's motive, if material, for participating in the transaction—unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him. Cf. Hassman v. First State Bank, *supra.*

Applying this rule to our case, we think that the trial court properly concluded that plaintiff had not made a prima facie showing that defendant stood in a confidential relation to her. We find no evidence in the record to indicate that defendant ought to have known that plaintiff was placing her trust and confidence in defendant and was depending upon defendant to look out for her interests. The fact that plaintiff had done business with defendant for nearly 20 years could not by itself place defendant in a confidential relation to plaintiff. Nor could the fact that plaintiff had occasionally socialized with the wife of defendant's president somehow change the character of defendant's relation to plaintiff into a fiduciary one. Absent a prima facie showing that defendant knew or ought to have known that plaintiff was placing her trust and confidence in defendant and was depending on defendant to look out for her interests, we must affirm the directed verdict on this issue.

2. Plaintiff also contends that she established a prima facie case that defendant breached an agreement to satisfy its loan from the proceeds of the Keye account. But Minneapolis Brewing Co. v. Yahnke, 148 Minn. 178, 181 N. W. 331 (1921), on which plaintiff relies, is clearly distinguishable. In that case, the plaintiff loaned one of two defendants a sum of money, for which the second defendant agreed to act as surety. The plaintiff agreed that sums coming due to it on account from the first defendant would be applied to the reduction of the loan. Plaintiff breached this agreement. We held that the agreement was a material element of the contract, and reversed a directed verdict against the defendant surety. The instant case differs in that plaintiff introduced

no evidence that the parties conditioned plaintiff's pledge upon defendant's agreeing to satisfy its loan from proceeds of the Keye account. Plaintiff testified that she did not know about the preexisting assignment of the Keye account and that at most she assumed that, when the Keye debts were "repaid to Mrs. Schaub," Mrs. Schaub would pay up the loan and plaintiff would get her stock back. Schmick testified only that he contemplated that the proceeds from the Keye account would provide funds with which Mrs. Schaub would repay the loan. There is absolutely no evidence that the parties conditioned plaintiff's pledge upon defendant's agreeing to satisfy its loan from proceeds of the Keye account. Accordingly, we feel that the trial court was correct in directing a verdict against plaintiff on this issue also.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.