John J. HURLEY and Sandra J. Hurley, on behalf of themselves and a class of others similarly situated, Appellants,

v.

TCF BANKING AND SAVINGS, F.A., formerly known as Twin City Federal Savings and Loan Association, Respondent.

No. C1-87-1097.

Court of Appeals of Minnesota.

Nov. 3, 1987.

Darron C. Knutson, Winthrop & Weinstine, St. Paul, for John J. Hurley.

John B. Bellows, Jr., Roedler & Bellows, St. Paul, for Sandra J. Hurley.

Timothy D. Kelly, Mary Lynn Jahnke, Mackall, Crounse & Moore, Minneapolis, for respondent.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. The class has not been certified. It is allegedly comprised of individuals who received a solicitation letter from TCF to prepay their

Heard, considered and decided by POPOVICH, P.J., and RANDALL and STONE,* JJ.

## OPINION

RANDALL, Judge.

Appellants, the Hurleys, on behalf of themselves and a purported class, sued respondent Twin City Federal (TCF) for fraud and negligent misrepresentation, based on statements TCF made in 1982 in a solicitation letter to appellants and other bank customers. The Hurleys moved in their complaint for class certification.[1] The trial court dismissed the complaint for failure to state a claim on which relief could be granted and granted judgment on the pleadings. The Hurleys appeal. We affirm.

## FACTS

For purposes of this appeal, TCF and the Hurleys agree on the underlying facts.

In 1980, the Hurleys purchased a condominium and partially financed it with a $40,550 mortgage note at 10.5% through TCF. In 1982, their mortgage balance due TCF was $40,219.41. By 1982, home mortgage interest rates were substantially higher than 10.5%, and TCF wished to reduce its loan portfolio from what was now considered low interest rate mortgage loans. TCF decided to do this by offering customers with older and lower rates substantial principal discounts if they would prepay the outstanding balance on their mortgage loans.

On June 28, 1982, TCF mailed appellants a letter, similar to that sent to other TCF mortgage customers, offering three different refinance plans. Appellants chose TCF's Plan # 2, which provided that TCF would give them a 25%, or $10,054.85, discount if they paid TCF $30,164.56 by August 4, 1982, on their principal.

mortgages, who elected to accept the solicitation, and who incurred an additional state or federal income tax liability due to recognition of "forgiveness of indebtedness income."

In their complaint, appellants allege TCF committed fraud by representing to them in a solicitation letter that they would realize a $10,054.85 savings by prepaying their loan under Plan #2. Appellants claim they actually "saved" much less than $10,054.85 because the amount of the discount was recognized as forgiveness of indebtedness income, subject to taxation under I.R.C. § 61(a) (1982). The Hurleys did not allege in their complaint what, if any, amount they paid in taxes, interest, or penalties, after paying off their mortgage at the discounted rate.

## ISSUE

Did the trial court err by dismissing the complaint for failure to properly allege a cause of action?

## ANALYSIS

When reviewing the dismissal of a complaint for failure to state a claim, Minn.R. Civ.P. 12.02(5), the only question before us is whether the complaint sets forth a legally sufficient claim for relief. Appellants need not prove the facts in the body of the complaint. *Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29, 32 (Minn.1980). Under this rule, a complaint will be dismissed only if

> it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded.

*Id.* at 32 (citation omitted).

To set forth a legally sufficient claim for relief, appellants must plead the elements of fraud and negligent misrepresentation. Their claim for fraud must include the following allegations:

1. There must be a representation;
2. That representation must be false;
3. It must have to do with a past or present fact;
4. That fact must be material;
5. It must be susceptible of knowledge;
6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;
8. That person must be so induced to act or so justified in acting;
9. That person's action must be in reliance upon the representation;
10. That person must suffer damage;
11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re–Trac Manufacturing Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–9 (1967).

Appellants also alleged negligent misrepresentation. Negligent misrepresentation occurs when:

> One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Bonhiver v. Graff*, 311 Minn. 111, 122, 248 N.W.2d 291, 298 (1976) (citation omitted); *see also, Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn.1986).

Appellants' allegations of both fraud and negligent misrepresentation, arise from the following statement contained in TCF's letter to them:

> *You can save $10,054.85 (25.000%) by paying your present mortgage balance in full* before 8/04/82. This plan will save you 341 months in mortgage payments. All you need to do is send us a check for $30,164.56 plus accrued interest and your mortgage will be paid forever.

(Emphasis added). Appellants allege that the statement "[y]ou can save $10,054.85 * * * by paying your present mortgage balance in full" is false. They claim they did not save $10,054.85 because the transaction resulted in a taxable event under I.R.C. § 61(a)(12), and they had to pay tax-

es on the amount of the discount. Appellants also argue TCF negligently misled them by failing to disclose the actual amount they would save after taxes.

Omission or nondisclosure may, at times, constitute fraud. However, before a claim of fraud may be established based upon failure to disclose a certain facts, there must first be a duty, either legal or equitable, to disclose that fact. *Richfield Bank and Trust Co. v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976). The trial court here concluded the negligent misrepresentation claim, if any, depended on a finding of a duty owed by TCF to appellants. The trial court found no such duty.

First, the trial court concluded TCF's statement, that appellants would save money on the transaction, was true. Then the trial court concluded that TCF had no duty to disclose the tax consequences of the transaction, and thus appellants failed to adequately allege the required elements of either fraud under *Davis* or negligent misprepresentation, under *Bonhiver* and *Florenzano*. The district court said:

> [I]t is evident that the Hurleys have not stated a claim for either fraud or negligent misrepresentation. Both claims require that the communicated information be *false*. It was not a falsity for TCF to state that the Hurleys would "save" $10,054.85. If they had not acepted this offer, they would have owed the bank the entire remaining principal of $40,-219.41, which would be $10,054.85 *more* than the amount they paid on this offer. Therefore, the Hurleys "saved" $10,-054.85 on their mortgage loan.

(Emphasis in original).

■ We agree with the trial court's conclusion that TCF's statement was true, and we affirm the trial court's conclusion that appellants did not adequately allege fraud. When appellants accepted TCF's offer, appellants received an actual $10,054.85 reduction in their loan principal. This reduction is what TCF offered. If they had not accepted TCF's offer, appellants would have continued to owe TCF the entire $40,-219.41. Appellants do not contest this.

Appellants argue the fraudulent misrepresentation made by TCF was the *value* appellants would gain from prepayment. Appellants point out that although they did not receive cash, the Internal Revenue Service (I.R.S.) takes the position that the discount or partial forgiveness is income to them under I.R.C. § 61(a)(12). *Cf. United States v. Kirby Lumber Co.*, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931) (corporation's repurchase of bonds at less than face value was taxable income). Appellants argue that the trial court incorrectly concluded the difference between $40,219.41 and the discounted amount of $30,161.56 constituted a savings to the Hurleys, since they paid tax on the savings.

The trial court found that TCF did not breach a duty to disclose the tax consequences of the transaction, as no duty existed. TCF had no way of knowing, or even speculating, what tax consequence, if any, would attach to each of their individual mortgagors who accepted its offer.

We see no basic difference between TCF's solicitation letter and any bank's advertisement to pay, for example, five, six, or seven percent interest to depositors on savings accounts. Banks are not required in their advertising to point out that the depositor will not "net" the entire amount of interest accrued since interest is subject to taxation. The fact that interest income is taxable does not in any way take from its definition as income. The fact that appellants' discount was ultimately taxable does not take away from the fact that they received the real cash deduction in the outstanding balance of their mortgage that they were offered.

As to the possible tax consequences, a bank has no duty to disclose unless a fiduciary duty exists. *Norwest Bank of Hastings v. Clapp*, 394 N.W.2d 176, 179 (Minn. Ct.App.1986). Generally, a bank is not in a fiduciary relationship with a customer, rather the relationship is one of debtor and creditor. *Stenberg v. Northwestern National Bank of Rochester*, 307 Minn. 487, 238 N.W.2d 218 (1976).

*Florenzano* defines "duty" as being:

commonly reserved [for] obligations of performance * * * which rest upon a person in an official or fiduciary capacity * * * [and] includes such offices or relationships as those of attorney at law, guardian, executor or broker, a director of a corporation and a public official. *Florenzano*, 387 N.W.2d at 175. TCF, in these general letters to hundreds of customers, did not stand in an official or fiduciary capacity with appellants under *Florenzano*.

The district court properly found TCF had no other duty to disclose possible tax consequences, based on *Norwest Bank of Hastings v. Clapp*, 394 N.W.2d 176. This court in *Clapp* held:

Norwest had no duty to disclose because no fiduciary or confidential relationship existed between Clapp and Norwest. In Minnesota, a bank has no duty to disclose unless a fiduciary relationship exists:

We believe the correct rule to be that when a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction—including the bank's motive, if material, for participating in the transaction—unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him. *Klein v. First Edina National Bank*, 293 Minn. 418, 422, 196 N.W.2d 619, 623 (1972).

*Id.* at 179.

Appellants did not allege that they expected TCF to advise them of possible tax consequences of the transaction. They did not ask TCF for tax advice. Moreover, TCF was not in a position to have superior knowledge of appellants' tax situation as compared to appellants. Appellants' sole source of complaint is the discount statement made in TCF's letter.

To hold TCF liable for negligently failing to discover tax consequences would be unreasonable. TCF would have had to ex-haustively explore the financial affairs of each mortgage customer. We agree with the trial court that TCF did not possess superior, or, for that matter, even equal knowledge, with regard to appellants' tax situation.

In addition, the court correctly stated: The Hurleys, as U.S. citizens were on notice of Federal tax laws. The Federal Income Tax Code § 61(a) defines all elements of gross income, and subdivision 12 of that section specifically includes discharge of indebtedness. It is therefore no defense that TCF did not inform them of the tax consequences.

TCF was not in a position to give tax advice. TCF did not hold itself out in the solicitation letters as an expert in accounting or tax law.

We affirm the trial court's conclusion that TCF delivered the mortgage discount TCF offered; that TCF owed no duty to appellants; and that nothing in their complaint suggests that appellants were relying on TCF for tax advice when they accepted TCF's offer.

### DECISION

The trial court properly dismissed appellants' claim.

Affirmed.