In the Matter of the TRUST CREATED BY Louis W. HILL ON DECEMBER 31, 1917, FOR THE BENEFIT OF MAUD HILL SCHROLL.

Nos. C7–92–1877, C9–92–1878.

Court of Appeals of Minnesota.

April 20, 1993.

Review Denied July 15, 1993.

477

David F. Herr, Maslon Edelman Borman & Brand, Minneapolis, and Mark Herrmann, Jones, Day, Reavis & Pogue, Cleveland, OH, for respondent Maud Hill Schroll.

Richard J. Thomas, Patrick H. O'Neill, Jr., Geraghty, O'Loughlin & Kenney, St. Paul, and Dominic J. Campisi, Evans, Latham, Harris & Campisi, San Francisco, CA, for appellant University Nat. Bank and Trust Co. of Palo Alto, CA.

Boyd H. Ratchye, Alan I. Silver, Robert G. Hensley, Patrick Williams, Doherty, Rumble & Butler, St. Paul, for respondent First Trust Nat. Ass'n.

Bradley G. Clary, Oppenheimer Wolff & Donnelly, St. Paul, for respondent Louis W. Hill, Jr. & Louis Fors Hill.

Frank G. Hammond, Alan H. Maclin, Briggs and Morgan, P.A., St. Paul, for respondent Doherty, Rumble & Butler.

John F. Alden, III, Minneapolis, and Michael E. Tankersley, Alan B. Morrison, Public Citizen Litigation Group, Washington, DC, for Public Citizen Litigation Group.

Michael R. O'Brien, Thomas C. Atmore, O'Neill, Burke, O'Neill, Leonard & O'Brien, Ltd., St. Paul, for respondent Patrick H. O'Neill.

Joseph L. Alioto, Sr., pro se.

James M. Dombroski, pro se.

Considered and decided by ANDERSON, C.J., and PARKER and KALITOWSKI, JJ.

## OPINION

ANDERSON, Chief Judge.

Appellant Maud Hill Schroll, the beneficiary of a securities and timberland trust, tried to unilaterally remove the trustee of her 1917 trust and appoint a replacement. The trustee petitioned the district court for instructions, challenging Hill Schroll's appointment and removal power. Hill Schroll and her two children counterclaimed against the trustee, alleging mismanagement of the trust assets and breach of fiduciary duties. The court concluded the trust instrument did not give Hill Schroll the unilateral power to appoint and remove trustees. It also found the trustee had neither mismanaged assets nor breached its fiduciary duty to the beneficiary. We affirm.

## FACTS

On New Year's Eve day, 1917, Louis W. Hill, Sr., the son of railroad magnate James J. Hill, created trusts for his wife, Maud van Cortlandt Taylor Hill, and his four minor children, Louis W. Hill, Jr., Cortlandt T. Hill, James Jerome Hill, II, and Maud van Cortlandt Hill (Hill Schroll). He retained the services of William Mitchell, an attorney with Doherty, Rumble & Butler (Doherty), to draft the trust instruments. Each trust contained various securities and an undivided one-sixth interest in about 100,000 acres of Oregon timberland. Louis W. Hill, Sr. retained the remaining one-sixth of the timberland for himself. Now, three-quarters of a century later, we are asked to render an opinion as to what Louis W. Hill, Sr. intended the trust language to mean.

The Louis W. Hill, Jr. 1917 Trust, the Cortlandt T. Hill 1917 Trust, and the Maud van Cortlandt Hill Schroll 1917 Trust (Hill Schroll 1917 Trust) exist today. Two of the original trusts—Maud van Cortlandt Taylor Hill's and James J. Hill, II's—terminated upon their beneficiaries' deaths, and the assets poured over into the three remaining trusts.

Louis W. Hill, Sr. acted as sole trustee of all the trusts until 1941, when he appointed his son, Louis W. Hill, Jr., as trustee of his own trust, and First Trust National Association (First Trust) as trustee of the other trusts. Louis W. Hill, Jr. acted as sole trustee of his own trust until First Trust was appointed co-trustee in 1983. Louis W. Hill, Jr.'s wife, Elsie Hill, and son, Louis Fors Hill, were also appointed as co-trustees of Louis W. Hill, Jr.'s trust. Gaylord Glarner, a retired officer of First Trust, was appointed co-trustee of the Cortlandt Hill Trust at the same time. For a short period in 1989, Ronald Poole, an investment advisor, served as co-trustee of the Hill Schroll 1917 Trust along with First Trust.

In 1937, before appointing his son trustee, Louis W. Hill, Sr. retained Mason, Bruce & Girard (Mason), an Oregon timber management firm, as consultants for the Oregon timberland. To provide on-site management of the timberland, Louis W. Hill, Sr. and First Trust created Timber Service Company.[1] In 1946, Louis W. Hill, Sr. entered into long-term cutting contracts with Willamette National Lumber Company (Willamette) and Santiam Lumber Company (Santiam). The contracts, entered into in response to the post-war demand for timber, called for cutting all old-growth timber from the trust timberland over the next 30 years. About 20 years later, in 1967, Willamette and Santiam merged into a single company called Willamette Industries and, at about the same time, a management decision was made to reduce the harvest level under the contracts. The contracts terminated in 1986.

Although Willamette Industries' cutting contract was to end in 1986, managers of the timberland began preparing for its conclusion in the 1970s. Preparation for the contract's termination was discussed at annual meetings in Oregon, which the trustees, timber managers, consultants, and beneficiaries attended. In June 1989, an

---

**1.** In 1978, Timber Service ceased to exist and timber management was transferred to Barringer & Associates (Barringer), another Oregon company.

organizational meeting was held which only the trustees and timber managers attended. At this meeting, Jack Barringer of Barringer & Associates explained that a reduced volume of timber would be available for harvest over the next 50 years due to the inventory's young age distribution. He referred to this reduced volume of available timber as a "black hole."

Two months later, the trustees held another meeting before the 1989 annual meeting, where they discussed the information about the annual harvest levels to be presented to the beneficiaries at the upcoming annual meeting. Ronald Poole attended this second meeting and later told Hill Schroll that her timber income would be reduced. Immediately, Hill Schroll signed an instrument purporting to remove First Trust pursuant to her power to appoint and remove trustees under the trust instrument. She appointed two of her children, J. Christopher Schroll and Susannah Schroll, as replacement trustees. Later, on May 30, 1990, she removed her children by written instrument and appointed University National Bank & Trust Company of Palo Alto, California (University Bank) as sole trustee.

After Hill Schroll appointed her children as trustees, First Trust petitioned the Ramsey County District Court (trial court) for instructions regarding its duties with respect to the management of the timberland. The petition was amended twice, and ultimately First Trust challenged Hill Schroll's mental competency and her unilateral power to appoint and remove trustees under the trust instrument. Hill Schroll and two of her children (the Schrolls) brought an action against First Trust, Mason, and Barringer, alleging mismanagement of the timberland and breach of fiduciary duties.

During this time, the Schrolls asked Doherty to refrain from representing First Trust in the litigation because the firm had also represented Hill Schroll in personal matters for much of her life. When Doherty refused, the Schrolls moved the trial court for Doherty's disqualification. The trial court denied their disqualification motion and a subsequent reconsideration mo-

tion. The Schrolls then sued Doherty for legal malpractice.

In July 1991, the trial court granted First Trust partial summary judgment on the Schrolls' mismanagement and breach of fiduciary duty claims. Dismissal of the claims involving First Trust's pre–1984 conduct was based on the statute of limitations, and claims involving pre–1988 conduct were dismissed based on res judicata. The trial court also dismissed the Schrolls' malpractice claim against Doherty for pre–1984 conduct, based on the statute of limitations. The malpractice claim for conduct after 1984 survived and was severed from this litigation. In August 1991, the trial court dismissed the Schrolls' mismanagement claim against Mason and Barringer.

In October 1991, the trial court allowed University Bank to intervene. After a ten-week bench trial in 1992, the trial court concluded (1) Hill Schroll did not have unilateral power to appoint and remove trustees under the trust instrument; (2) the doctrine of hostility does not require that First Trust be removed as trustee; and (3) First Trust neither mismanaged the Oregon timberland nor breached any fiduciary duty to the Schrolls. The Schrolls' motions for amended findings and a new trial were denied. They now appeal from the final judgment.

## ISSUES

I. Did the trial court err by holding Hill Schroll lacked the unilateral power to appoint and remove trustees?

II. Did the trial court improperly restrict University Bank's role as an intervenor?

III. Did the trial court err by dismissing some of the Schrolls' claims on the ground they had no standing as trust beneficiaries to sue agents of the trustee?

IV. Did the trial court err by dismissing several counterclaims arising from the trustee's conduct prior to 1988?

V. Did the trial court err by blocking the Schrolls' discovery about certain issues and by making findings resolving those same issues?

VI. Did the trial court erroneously deny the Schrolls' request for a jury trial on their abuse of process claim?

VII. Did the trial court err by failing to disqualify Doherty, Rumble & Butler from representing the trustee?

VIII. Did the trial court err by requiring the Maud Hill Schroll 1917 Trust to pay the legal fees for every party to this proceeding?

IX. Did the trial court err by not sanctioning the Schrolls' trial attorneys?

## ANALYSIS

### I.

The trial court held Hill Schroll did not have the unilateral power to appoint and remove trustees. On appeal, the Schrolls challenge the trial court's determination, contending (a) the trial court improperly construed the trust document; (b) the doctrine of practical construction governs; (c) equitable estoppel precludes First Trust from denying Hill Schroll has the power to appoint and remove trustees; (d) collateral estoppel precludes First Trust from relitigating Hill Schroll's appointment and removal power; and (e) the doctrine of hostility requires First Trust be removed as trustee. We disagree and conclude the trial court properly held Hill Schroll lacks unilateral appointment and removal power under the trust.

### A. The trust language

■ The Schrolls and University Bank contend this court should independently review the trial court's interpretation of the trust document. We disagree. Where the trial court has interpreted an unambiguous written document, the standard of review is de novo. *Horton Mfg. Co. v. Tol–O–Matic Inc.*, 973 F.2d 649, 650 (8th Cir.1992); *see also National City Bank v. St. Paul Fire & Marine Ins. Co.*, 447 N.W.2d 171, 175 (Minn.1989), *cited in Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992) (interpretation of the language of a contract is independently reviewed where there is no dispute of material fact).

However, where critical evidence in the case turns on extrinsic evidence about the settlor's intent and disputed expert opinions about the language of the trust instrument, a "clearly erroneous" standard of review applies. *See Toombs v. Daniels*, 361 N.W.2d 801, 805 (Minn.1985) (if oral testimony regarding intent or construction of documentary evidence is presented, the clearly erroneous standard applies). Application of the clearly erroneous standard is supported by Minn.R.Civ.P. 52.01. Amended in 1985, the rule states that "[f]indings of fact, whether based on oral *or documentary evidence,* shall not be set aside unless clearly erroneous." Minn.R.Civ.P. 52.01 (emphasis added).

■ The Schrolls and University Bank argue that only the four corners of the trust document were at issue here, requiring no extrinsic evidence. The trial court found, however, the provisions of the trust instrument relating to the power to appoint and remove trustees were ambiguous. This finding is supported in the record not only by First Trust's expert witness, but also by the Schrolls' own expert. Once the trust provisions were deemed ambiguous, extrinsic evidence concerning the settlor's intent was necessary. *See* Restatement (Second) of Trusts § 4, comment a (1959).

■ Here, the parties disputed what Louis W. Hill, Sr. intended regarding the power to appoint and remove trustees. As in *Toombs*, substantial expert testimony was offered concerning the construction of the language of the trust agreement and the settlor's intent. Based upon the trust instrument's language construed as a whole, the trial court determined Louis W. Hill, Sr. did not intend to grant his children the power to appoint and remove trustees after his death without the concurrence of his wife. This finding, although designated as a conclusion of law, is essentially one of fact. *See J.J. Brooksbank Co. v. Budget Rent–A–Car Corp.*, 337 N.W.2d 372, 373 n. 1 (Minn.1983) (appellate courts generally construe a finding or conclusion to be a finding or conclusion based on its true character, regardless of how it is labeled).

Accordingly, the trial court's findings will not be disturbed unless we are left with the definite and firm conviction that a mistake has been made. *Toombs*, 361 N.W.2d at 805.

The trustee appointment and removal provision in Maud Hill Schroll's trust provides:

After the death of the Trustor, new trustees may be appointed or trustees in office may be removed by the concurrence of Maud van Cortlandt Taylor Hill, *if she be then surviving, together with the concurrence of the children* of the Trustor surviving from time to time, but one dissenting vote among such children shall not defeat the exercise of this power by the remainder, the exercise of this power to be evidenced by written instrument duly executed by the persons required to concur therein.

(Emphasis added.)

The settlor, Louis W. Hill, Sr., retained the power of appointment while living. After his death, the power to appoint and remove could be exercised by his wife, "if she be then surviving, together with the concurrence of the children." The Schrolls contend the appointment and removal power survived the death of Louis W. Hill, Sr.'s wife, while First Trust asserts the power ended upon her death. We agree with First Trust and the trial court and conclude the children's power to appoint and remove trustees under the trust instrument ended when their mother died.

The paragraph concerning the power to appoint and remove trustees is ambiguous and reasonably subject to different interpretations. Indeed, two respected experts on trust construction differed in their opinions at trial. However, Louis W. Hill, Sr.'s intent is not so uncertain when the trust instrument is read as a whole. When construing a trust instrument:

First to be determined is donor's intention as expressed in the language used in the trust instrument. In that determination we are to be guided by the well known principle that the entire instrument must be considered, "aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument."

*In re Anneke's Trust*, 229 Minn. 60, 71, 38 N.W.2d 177, 183 (1949) (quoting *In re Watland's Trust*, 211 Minn. 84, 91, 300 N.W. 195, 198 (1941)).

Louis W. Hill, Sr.'s children were all minors when the trust was created in 1917. The trust instrument imposes a great deal of control over the conduct of the settlor's children and grandchildren. Their lifestyle, for example, dictated the amount of money they could receive from their respective trusts: the use of tobacco, drugs and alcohol was prohibited; a strict spendthrift clause allowed suspension of payments for "misconduct," "idleness," or "evil ways"; children received more money upon a marriage approved by the other children. Also, Louis W. Hill, Sr. treated his sons differently under the trust than he treated Hill Schroll, his only daughter: his sons were apportioned money for college while Maud was not, since she was not expected to go to college. Given Louis W. Hill, Sr.'s concern for his children's behavior as expressed through the trust document, it is unlikely he intended to grant them the unilateral power to appoint and remove trustees. *See Northwestern Nat'l Bank of Minneapolis v. Simons*, 308 Minn. 243, 245, 242 N.W.2d 78, 79 (1976) ("a court's cardinal purpose in construing a trust is to ascertain the intent of the settlor").

When the trust was created in 1917, two scenarios were possible: Louis W. Hill, Sr. could either survive or predecease his wife. The Schrolls contend the appointment and removal provision of the trust applied "[a]fter the death of the [t]rustor" regardless of whether his wife was still living. If that were the settlor's intent, it was possible the provision might be invoked while the children were all still minors, since it was conceivable that both parents could die before their children reached adulthood. Because of the restrictions Louis W. Hill, Sr.

placed upon his children, it is improbable he intended to give them appointment and removal power as adults, let alone as children.

Furthermore, participation of the settlor's wife appears crucial, "together with" that of her children. Therefore, we interpret "if she be then surviving" to mean that the appointment and removal provision was triggered if Maud van Cortlandt Taylor Hill survived the death of Louis W. Hill, Sr. *See Anneke's Trust,* 229 Minn. at 71, 38 N.W.2d at 183 (effect must be given to the settlor's intentions as expressed in the terms of the trust). Because Louis W. Hill, Sr.'s wife is no longer living, his children, including Hill Schroll, did not have the unilateral power to remove First Trust as trustee.

## B. Practical construction

■ The doctrine of practical construction does not afford Hill Schroll the power to appoint and remove trustees. *See In re Campbell's Trusts,* 258 N.W.2d 856, 864 (Minn.1977) (under practical construction doctrine, the parties may adopt their own interpretation of "obscure or doubtful provisions" and clarify ambiguous language between themselves). First Trust and Hill Schroll never adopted a precise interpretation of the trust provision. On one occasion, both First Trust and Doherty gave the Schrolls the impression Hill Schroll had the power to appoint and remove trustees under the trust; at a different time, however, they gave her the opposite impression.[2] The parties never settled on one meaning of the trust provision, and therefore the doctrine of practical construction is inapplicable.

## C. Equitable estoppel

■ The Schrolls contend First Trust should be equitably estopped from denying Hill Schroll has the power to appoint and remove trustees. The doctrine of equitable estoppel may bar First Trust from denying the truth of representations previously made when the following conditions are met: (1) there must be a misrepresentation of a material fact; (2) the party to be estopped must be shown to have known that the representation was false; (3) the party to be estopped must have intended that the representation be acted upon; (4) the party asserting the estoppel must not have had knowledge of the true facts; and (5) the party asserting the estoppel must have relied upon the misrepresentation to his or her detriment. *Transamerica Ins. Group v. Paul,* 267 N.W.2d 180, 183 (Minn. 1978).

As discussed above, First Trust gave Hill Schroll conflicting opinions about her power to appoint and remove trustees. The record reflects First Trust did not know its representations to the Schrolls were incorrect; the Schrolls were plainly aware of First Trust's different opinions on Hill Schroll's power to appoint and remove and could not have reasonably relied on one over the other; and finally, the Schrolls did not rely on First Trust's representations to their detriment. Under these circumstances, equitable estoppel does not apply.

## D. Collateral estoppel

■ Collateral estoppel prevents a party from relitigating issues if (1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party in the prior case; and (4) there was a full and fair opportunity to be heard on the issue. *In re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990) (citing *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 902 (Minn.1984), *pet. for rev. denied* (Minn. Nov. 28, 1990)). Collateral estoppel does not apply when the issue has not been actually litigated or decided at trial or on appeal. *Id.* at 376.

■ The Schrolls contend the 1983 appointment of First Trust, Elsie Hill, and Louis Fors Hill as co-trustees of Louis W. Hill, Jr.'s 1917 Trust, and the 1989 appointment of Ronald Poole as trustee to Hill

---

**2.** Doherty attorney Irving Clark, representing First Trust, informed Hill Schroll in a January 26, 1979 letter that she did not have the power to appoint and remove trustees. Clark's successor, Richard Wilhoit, expressed the opposite opinion in a May 11, 1987 letter to First Trust.

Schroll's 1917 Trust constitute collateral estoppel. We disagree. First, in Louis W. Hill, Jr.'s 1983 appointment petition, he acknowledged that the trust instrument did not give him the unilateral power to make the appointment; instead, he was requesting the court to do so by its discretionary power. The 1983 trustee appointment was ultimately made pursuant to the court's equitable powers. Hence, the issue raised in this litigation—Hill Schroll's power to appoint and remove under the trust document—is neither the same one presented to the trial court by Louis W. Hill, Jr.'s 1983 petition nor was the issue's resolution essential to the 1983 appointment. *See Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982).

Similarly, the 1989 appointment of Ronald Poole as trustee does not bar litigation of the trust's appointment and removal provision. During the 1989 appointment hearing, the trial court was asked to set Poole's fees; the appointment or removal issue was neither raised nor litigated. *See McCarty v. Budget Rent–A–Car,* 282 Minn. 497, 500, 165 N.W.2d 548, 550 (1969) (no estoppel if matter is not put in issue by parties in former action). Moreover, the court was not specifically asked to, nor did it, make a finding that Poole was appointed under Maud's unilateral power of appointment. Poole could have been appointed at the discretion of the trial court since the trial court realized both parties consented to the appointment. Because the trial court's 1989 judgment did not unequivocally decide the issue, collateral estoppel did not bar litigation of Hill Schroll's appointment and removal power. *See Hauser v. Mealey,* 263 N.W.2d 803, 808 (Minn.1978) (where a judgment may be based on one or more grounds, but did not expressly rely on any one of them, none of the grounds are conclusively established under the doctrine of collateral estoppel).

### E. Hostility

The Schrolls argue that the trial court erred by not removing First Trust as trustee because of patent hostility between the parties. Hostility may naturally exist in trust relationships since trusts are usually created to withhold control of the trust principal from the beneficiaries. Hostility between the trustee and the beneficiaries of the trust alone is insufficient to require the removal of the trustee. *Sternberg v. St. Louis Union Trust Co.,* 163 F.2d 714, 719 (8th Cir.1947), *cert. denied,* 332 U.S. 843, 68 S.Ct. 267, 92 L.Ed. 414 (1947). To be sufficient to require removal, the hostility must interfere with the proper administration of the trust. *Id.* The Schrolls have failed to present any evidence that hostility has threatened proper management of the trust.

First Trust acted effectively as trustee of Hill Schroll's 1917 Trust throughout this three-year litigation. The trial court found that First Trust did not mismanage the timberland or breach any fiduciary duties owed to the beneficiaries, a conclusion the Schrolls do not contest on appeal. *See In re Hormel's Trusts,* 282 Minn. 197, 205, 163 N.W.2d 844, 850 (1968) (trustee's right to manage trust cannot be confiscated except for abuse or violation of its duties). Moreover, the trial court witnessed the dynamics between these parties throughout this litigation and was in the best position to determine whether administration of the trust suffered because of this lawsuit.

Furthermore, the hostility that exists between the trustee and the beneficiary was created primarily by the beneficiary through her attempt to remove the trustee. "It would be a poor rule indeed that would permit a beneficiary to remove a trustee for hostility itself engendered." *IFS Indus., Inc. v. Stephens,* 159 Cal.App.3d 740, 205 Cal.Rptr. 915, 925 (1984). We "will not sanction the creation of hostility by a beneficiary in order to effectuate the removal of a trustee." *duPont v. Southern Nat'l Bank of Houston,* 771 F.2d 874, 885–86 (5th Cir.1985) (quoting *Akin v. Dahl,* 661 S.W.2d 911, 914 (Tex.1983), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1984)); *see also Wolosoff v. CSI Liquidating Trust,* 205 N.J.Super. 349, 500 A.2d 1076, 1083 (1985); *In re Luhrs' Trust,* 443 N.W.2d 646, 651 (S.D.1989). Accordingly,

the trial court acted within its discretion by deciding not to remove First Trust as trustee on the ground of hostility. *See In re Gershcow's Will*, 261 N.W.2d 335, 338 (Minn.1977) (determining grounds for trustee removal is within trial court's discretion).

## II.

University Bank argues the trial court improperly restricted its role during the litigation. The granting of intervention to University Bank is discretionary with the trial court and the trial court's determination will not be modified unless a clear abuse of discretion is shown. *See Snyder's Drug Stores, Inc. v. Minnesota State Bd. of Pharmacy*, 301 Minn. 28, 34, 221 N.W.2d 162, 166 (1974).

### A. University Bank's status

■ The initial question is University Bank's status during the litigation. Plainly, University Bank was not an original party to this action because it was neither named as a party nor served with the petition for instructions. *See Wiggin v. Apple Valley Medical Clinic, Ltd.*, 459 N.W.2d 918, 920 (Minn.1990) ("party" means only the named plaintiff or defendant). Nor was University Bank joined as an indispensable party. Its interests were adequately protected by the Schrolls. *See* Minn.R.Civ.P. 19.01 (an entity shall be joined in the action if complete relief cannot be accorded among those already parties). There was nothing to prevent the Schrolls from arguing University Bank's interests just as vigorously as they would their own. Accordingly, University Bank's status in this litigation was that of a permissive intervenor. *See* Minn.R.Civ.P. 24.-02.

The majority of University Bank's interests arose on May 30, 1990, the date Hill Schroll attempted to designate it as sole trustee. At this time, University Bank could have sought active intervention in the proceedings. Instead, University Bank delayed its involvement for a full year for reasons not appearing in the record. By the time of its intervention, University Bank had known of its interests for over a year, the litigation had progressed significantly, and prejudice to the existing parties, if University Bank were accorded unrestricted intervention status, had grown considerably. The trial judge had already presided over this complex litigation for 20 months. He had decided a motion for partial summary judgment which entailed reviewing hundreds of pages of arguments, in addition to nine volumes of exhibits. Consequently, the trial court's grant of limited intervention to University Bank at this late stage, when full intervention would have substantially prejudiced the parties, was within its discretion. *See SST, Inc. v. City of Minneapolis*, 288 N.W.2d 225, 230 (Minn.1979) (when court determined full intervention was inappropriate, limited intervention was proper).

### B. University Bank's limited role

■ Once it intervened, University Bank contends the trial court erred by first, preventing it from taking depositions on its own behalf; second, binding it to orders entered before it became a party; third, not allowing it to litigate the timber mismanagement issue; and fourth, quashing its notice of removal. We disagree.

First, University Bank was given access to the numerous depositions taken by the Schrolls before University Bank intervened. If University Bank were allowed to redepose every individual and relitigate every issue already heard, the proceedings would have been unduly delayed and the existing parties would have been excessively burdened. *See* Minn.R.Civ.P. 24.02.

Second, many of the orders University Bank claims it should not be bound by were entered after University Bank acquired an interest in this case, but before it sought to become an active participant. Full intervention was unwarranted under these circumstances. Accordingly, the trial court acted within its discretion by requiring University Bank to take the case as it found it. *See generally Mondale v. Commissioner of Taxation*, 263 Minn. 121, 125, 116 N.W.2d 82, 85 (1962) (generally an intervenor takes the case as it finds it).

Third, because Hill Schroll did not have the authority to appoint or remove trustees, University Bank was not a valid successor trustee. Thus, a determination on the issue of whether First Trust mismanaged the timberland would not affect University Bank and therefore it had no standing to assert or litigate the claim of timber mismanagement. *See Envall v. Independent Sch. Dist. No. 704*, 399 N.W.2d 593, 596 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987) (to establish standing, party must show some personal stake in the outcome of controversy).

Fourth, the trial court properly granted First Trust's motion to quash University Bank's notice of removal. The Schrolls had unsuccessfully tried to remove the trial judge several times before University Bank intervened.[3] University Bank provided no substantial grounds for its notice of removal, the litigation had already progressed significantly, and University Bank had properly been accorded only limited intervenor status. Under these circumstances, the trial court acted within its discretion by quashing University Bank's notice of removal.

**C. Standing to appeal mismanagement issue**

■ University Bank did not have standing to litigate the timberland mismanagement at trial, yet it, and not the Schrolls,[4] raises the mismanagement issue on appeal. Hence, the question arises whether University Bank has standing to challenge the trial court's conclusion on the mismanagement issue. We conclude University Bank lacks standing.

An entity must be an "aggrieved party" to appeal from a judgment. *In re Everett's Trust*, 263 Minn. 398, 401, 116 N.W.2d 601, 603 (1962). To render a party aggrieved by a judgment so as to entitle him or her to appeal from it, the right invaded

must be "immediate, not merely some possible, remote consequence, or mere possibility arising from some unknown and future contingency." *Id.* University Bank's interests arise, if at all, from the future contingency that University Bank be deemed the successor trustee. As decided above, we have affirmed the trial court's ruling that Hill Schroll does not have the unilateral power to appoint and remove a trustee, and accordingly, University Bank is not the successor trustee. Under these circumstances, University Bank is not an aggrieved party and therefore has no standing to challenge the trial court's ruling on First Trust's alleged timberland mismanagement.

## III.

The Schrolls sued First Trust's Oregon agents for mismanagement of the trust timberland and concealment of the mismanagement. The Oregon agents included Mason and Barringer, two Oregon firms that managed the trust timberland for First Trust, and Carl Newport and Jack Barringer, two representatives of these firms. In August 1991, the trial court dismissed the Schrolls' claims against First Trust's Oregon agents. First Trust argues dismissal was proper because (1) the Schrolls, as beneficiaries of the trust, lacked standing to sue the Oregon agents, and (2) First Trust's indemnification of the Oregon agents precluded the Schrolls from pursuing claims against them. We agree.

■ The general rule is that the beneficiary may sue in her own name to enforce her rights under the trust when the trustee fails or neglects to do so. *Uselman v. Uselman*, 464 N.W.2d 130, 137 (Minn.1990) (quoting *Veranth v. Moravitz*, 205 Minn. 24, 29, 284 N.W. 849, 852 (1939)). However, the beneficiary may not maintain a suit in equity against a third party, except when the trustee "improperly refuses or

---

3. The Schrolls attempted to remove the trial judge based on prejudice. The trial court denied their motion to remove, and this court affirmed the trial court's ruling by order dated September 18, 1990. The Minnesota Supreme Court denied further review of the Schrolls' motion by order dated November 15, 1990.

4. After devoting most of their focus at trial to the mismanagement issue, the Schrolls fail to challenge on appeal the trial court's decision that the timberland was not mismanaged between 1988 and 1990.

neglects" to bring an action against a third person. IV Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 281 (4th ed. 1989); *see also* Restatement (Second) of Trusts § 282 (1959) (beneficiary cannot bring a direct action against a third party unless trustee either decides not to or neglects to bring an action).

■ The Schrolls argue the trial court was premature in dismissing the Oregon agents from this case. We agree. There were facts alleged by the Schrolls at the time of the dismissal motion, which could have been introduced consistent with their pleading, to support her claim that First Trust improperly failed to bring the claim against the Oregon agents. *See Northern States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963) (dismissal is proper if it appears to a certainty no facts consistent with the pleading could be introduced to support the claim).

While the trial court was premature in dismissing the agents, we must determine on appeal whether the trial court's error was prejudicial. In other words, would this court's refusal to vacate the dismissal and reopen the Schrolls' claim against the Oregon agents be "inconsistent with substantial justice"? *See* Minn.R.Civ.P. 61 (the court must disregard any error which does not affect the substantial rights of the parties).

We conclude the error was not prejudicial for three reasons: first, the Schrolls were allowed extensive cross-examination of Jack Barringer and Carl Newport regarding mismanagement claims during the trial; second, the trial court found that First Trust acted reasonably by not bringing an action against the Oregon agents; and finally, the trial court found by implication that the Oregon agents had not mismanaged the trust timberland. Under these circumstances, even though the trial court erred by initially dismissing the Oregon agents, the error was not prejudicial.

## IV.

The trial court dismissed the Schrolls' mismanagement and breach of fiduciary duty claims against First Trust and Doherty on two grounds—statute of limitations and res judicata. The Schrolls contend they should have been allowed more time for discovery, and thus the trial court prematurely granted partial summary judgment. The Schrolls further contend that fraudulent concealment tolled the limitations period and invalidated the preclusive effect of the prior trust accountings.

### A. Summary judgment motion

■ The Schrolls argue the trial court should not have granted partial summary judgment in favor of First Trust on their pre–1988 claims because discovery was occurring when the motion was heard. The Schrolls claim additional evidence of fraudulent concealment could have been presented if full discovery had been allowed. *See* Minn.R.Civ.P. 56.06 (when party moves prematurely for summary judgment, the trial court may grant a continuance to allow discovery). The trial judge has great discretion, however, to determine the procedural calendar of a case. *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982).

The summary judgment hearing was originally scheduled for August 13, 1990, but the trial court twice postponed it and ultimately scheduled the hearing for April 29, 1991. The Schrolls asked the court to move the hearing to June 15, 1991, or to some other date the court deemed appropriate. The court continued the hearing until May 22, 1991, but the Schrolls claim this continuance was not adequate. We disagree.

The Schrolls had notice and over nine months to prepare for the summary judgment hearing. They conducted extensive discovery during that period. They took over twenty depositions, including depositions of the major representatives of First Trust, Mason, and Barringer. The Schrolls did receive over 700,000 pages of documents through discovery shortly before the summary judgment hearing, but failed to direct the attention of this court to any evidence from the discovery material that strengthens their claim of fraudulent concealment. In view of these facts, the Schrolls were provided sufficient time for

discovery, and the trial court acted within its discretion by refusing to continue the hearing an additional three weeks. *See Menard, Inc. v. King De Son, Co.,* 467 N.W.2d 34, 38 (Minn.App.1991) (eight-week continuance sufficient time for adequate discovery).

### B. Statute of Limitations

■ The trial court concluded the Schrolls' claims prior to 1984 were barred by the statute of limitations. *See* Minn. Stat. § 541.05, subd. 1 (1990) (six-year limitations period). The general rule is that ignorance of a cause of action, which does not involve continuing negligence, trespass, or fraud, does not prevent the running of the statute of limitations. *Toombs v. Daniels,* 361 N.W.2d 801, 809 (Minn.1985). Where fraud is alleged and shown, however, the six-year period does not begin to run until the facts constituting fraud were discovered or, by reasonable diligence, should have been discovered. *Id.*

■ Fraud consists of

a false representation of a past or present material fact which is susceptible of knowledge, a defendant who knew the representation was false or made it without knowing whether it was true or false, and an intention to induce plaintiff to act in reliance on the misrepresentation and resulting damages.

*Karlstad State Bank v. Fritsche,* 392 N.W.2d 615, 618 (Minn.App.1986). The concealment of a material fact can also constitute fraud. *Id.* A fiduciary may be liable for fraudulent misrepresentation by silence even though there is no evidence of fraudulent statements or of intentional concealment. *Murphy v. Country House, Inc.,* 307 Minn. 344, 350, 240 N.W.2d 507, 511–12 (1976).

■ The Schrolls contend this issue hinges on when Hill Schroll knew or should have known of her claims. The Schrolls must first meet their burden of proving that material facts were actually concealed by First Trust before the issue of when the concealment was or reasonably should have been discovered arises. We agree with the trial court that the Schrolls have failed to provide evidence that First Trust fraudulently concealed material facts from them.

The Schrolls, for instance, claim First Trust failed to inform them that they had a right to terminate or renegotiate the Willamette contract when Willamette merged with Santiam in 1967. First Trust contests the Schrolls' claim they could have terminated or renegotiated the contract; but, even if the Schrolls had this right, they have failed to raise any genuine issues of material fact about why termination or renegotiation would have been proper at the time of the merger. The record reflects: (1) until 1967, returns under the contracts were much higher than comparable sales; (2) not until after the 1967 merger did profits decrease; (3) the Schrolls were informed of the impending merger and never objected to it; and (4) the Schrolls had knowledge that Willamette was involved in antitrust violations, had profited from those violations, and had consented to the trust's contributing to the negotiated settlement of Willamette's lawsuit. Accordingly, the trial court did not err by granting partial summary judgment based on the limitations period.

### C. Res Judicata

■ The trial court dismissed all of the Schrolls' claims prior to 1988 based on res judicata because the trust's annual accounts through 1987 had been approved by the court after notice and hearing. An order allowing an annual account of a trustee has the legal effect of a final judgment. *In re Enger's Will,* 225 Minn. 229, 235, 30 N.W.2d 694, 699 (1948). A judgment based on the beneficiaries' consent does not lessen its force or effect as a judgment. *In re Melgaard's Will,* 200 Minn. 493, 502, 274 N.W. 641, 646 (1937). In the event of fraud, the preclusive effect of the approved accounts is invalid. *See Enger's Will,* 225 Minn. at 239, 30 N.W.2d at 701; *see also In re Rosenfeldt's Will,* 185 Minn. 425, 241 N.W. 573 (1932) (orders are vulnerable to direct attack if induced by fraud or mistake of fact). In this case, the Schrolls have failed to establish the existence of genuine issues of fact concern-

ing fraud to invalidate the preclusive effect of the annual accountings before 1987.

In sum, the trial court did not err by finding that First Trust disclosed all material facts to the Schrolls. Since there are no genuine issues as to any material fact and First Trust was entitled to prevail as a matter of law, granting partial summary judgment to First Trust was proper. Likewise, the Schrolls' legal malpractice claim against Doherty for conduct before 1984 was properly dismissed as barred by the statute of limitations. The Schrolls failed to meet their burden of presenting evidence of fraud by Doherty.

## V.

■ The Schrolls claim the trial court erred by blocking discovery into the cause and effect of the reduced volume of timber available for harvest, when it ultimately made findings on the issue. The trial court has broad discretion in allowing discovery and its ruling will not be set aside unless there is an abuse of discretion depriving appellant of a fair trial. *See Gebhard v. Niedzwiecki*, 265 Minn. 471, 480, 122 N.W.2d 110, 116 (1963).

The Schrolls were granted extensive discovery before their last discovery request was denied. In response to the Schrolls' last set of interrogatories, First Trust answered nearly all of the interrogatories. Further, First Trust had previously provided most of the requested information to the Schrolls. Those interrogatories left unanswered did not deal with the cause and effect of the reduced volume of timber available for harvest. The Schrolls had ample opportunity to obtain the information sought, and consequently the trial court acted within its discretion by refusing to compel additional discovery.

The Schrolls also claim the trial court made findings about the effect the spotted owls' presence had on timber management decisions even though discovery into the owls' exact location was prohibited. The trial court's findings, however, make no express reference to the spotted owl issue or any inference about the effect of the spotted owls' presence on the timberland.

## VI.

The trial court denied the Schrolls' request for a jury trial. On appeal the Schrolls argue First Trust's September 1989 petition for instructions constituted an abuse of process warranting a jury trial. Whether the trial court erred by denying the Schrolls' demand for a jury trial is reviewed de novo. *Hanna v. Federal Land Bank Ass'n*, 903 F.2d 1159, 1161 (7th Cir.1990).

■ The right to a jury trial "shall extend to all cases at law." Minn. Const. art. 1, § 4; *see also* Minn.R.Civ.P. 38.01 ("In actions for the recovery of money only, or of specific real or personal property, the issues of fact shall be tried by a jury"). The right to a jury trial does not extend to cases in equity. *Morton Brick & Tile Co. v. Sodergren*, 130 Minn. 252, 254, 153 N.W. 527, 528 (1915). The general rule is that the remedies of the "beneficiary against the trustee are exclusively equitable." *Uselman*, 464 N.W.2d at 137 (quoting Restatement (Second) of Trusts § 197 (1959)); *see also Plunkett v. Lampert*, 231 Minn. 484, 490, 43 N.W.2d 489, 493 (1950).

■ The question of entitlement to a jury trial is difficult to resolve when the pleadings facially demonstrate mixed issues at law and equity. *Uselman*, 464 N.W.2d at 137. Thus, the court's inquiry often requires scrutiny beyond the parties' own characterization of the issues. *See Landgraf v. Ellsworth*, 267 Minn. 323, 326, 126 N.W.2d 766, 768 (1964) (nature and character of the controversy is determined from pleadings and that determination governs the right to a jury trial). Here, the Schrolls' claims against First Trust involved the administration of the trust and were therefore equitable in nature. *See Plunkett*, 231 Minn. at 490, 43 N.W.2d at 493 (administration of trust is equitable in nature). The Schrolls argue their abuse of process claim against First Trust is legal in nature.

We hold the trial court properly concluded the Schrolls were not entitled to a jury trial. They mischaracterized their claim as

one of abuse of process. In essence, their claim is one to redress First Trust's alleged breach of trust in petitioning for instructions. *See* Minn.Stat. § 501B.16(19) (1990) (person interested in trust may petition to redress breach of trust). Such a claim is equitable in nature and therefore the Schrolls were not entitled to a jury trial.

■■■ Even if the Schrolls' abuse of process claim were legal in nature, the claim's success is contingent upon a finding that First Trust erred in some way by petitioning for instructions. Generally, if equitable issues are dispositive of the case, there is no reason to have a jury decide the legal issues. *Sina v. Schifsky*, 296 Minn. 528, 529, 208 N.W.2d 302, 304 (1973). In this case, the trial court ruled in favor of First Trust on all the equitable claims involving the trust administration. Because we affirm the trial court's decisions on trust construction and the accountings, these equitable claims are dispositive of the case. Therefore, any abuse of process claim is moot, and the fact a jury did not decide it does not constitute reversible error. *Id.* (jury trial not required where basic thrust of litigation was equitable and legal claim for money damages was contingent on equitable claim).

## VII.

The Schrolls contend that Doherty's former representation of Hill Schroll was substantially related to the issues raised in this proceeding, and the failure to disqualify Doherty requires a new trial. We are faced, in other words, with the question whether Doherty violated the Rules of Professional Conduct to the extent and under such circumstances that the trial court erred by not requiring Doherty to withdraw from representing First Trust. *See Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 731 (Minn.1983).

■■■ The law regarding disqualification of attorneys has been evolving:

As the law first developed, disqualification was found quite readily, since the integrity of the profession in the eyes of the public was paramount, and often the mere appearance of impropriety was enough. In more recent years, attention has also been given to countervailing interests, having in mind the organization and structure of today's law practice with the increase in size of law firms and the mobility of lawyers among firms. Thus, it is recognized that disqualification separates the client from his chosen counsel, causes delay, and may subject both the client and the disqualified lawyer to significant economic hardship.

*Id.*

An appellate court independently reviews the trial court's interpretation of the Rules of Professional Conduct. *Production Credit Ass'n v. Buckentin*, 410 N.W.2d 820, 823 (Minn.1987) (to ensure uniform application, reviewing court must retain the final independent, interpretive authority to define the scope and application of those rules). Factual findings must be upheld unless this court is left with the definite and firm conviction that the trial court made a mistake. *First Trust Co. v. Union Depot Place Ltd. Partnership*, 476 N.W.2d 178, 182 (Minn.App.1991), *pet. for rev. denied* (Minn. Dec. 13, 1991).

Rule 1.9 of the Minnesota Rules of Professional Conduct provides:

A Lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

The Minnesota Supreme Court has adopted a three-step approach to disqualification issues:

(a) Considering the facts and the issues involved, is there a substantial, relevant relationship or overlap between the subject matters of the two representations?

(b) If so, then certain presumptions apply: First, it is presumed, irrebuttably, that the attorney received confidences from the former client and he or she will not be heard to claim otherwise. Second, it is also presumed, but subject to rebuttal, that these confidences were conveyed to the attorney's affiliates.

(c) Finally, at this stage, if reached, the court weighs the competing equities.

*Jenson*, 335 N.W.2d at 731–732 (citations omitted).

This three-part test reflects the need to preserve the balance between the choice of retaining an attorney of one's own choosing and upholding attorneys' ethical standards. In this case, the need for balance is of special import: the Doherty firm drafted the five 1917 timberland trusts and has represented First Trust and its agents since First Trust became trustee of the Hill Schroll 1917 Trust in 1941. Hence, Doherty's representation of First Trust regarding the 1917 trusts has been extensive, and its representation of First Trust in the September 1989 petition for instructions was logical and dictated by practical and prudent motives. Yet, Doherty also represented Hill Schroll on various legal matters until March 1989. If these matters were substantially related to the pending issues [5] in this case and materially adverse to Hill Schroll's interests, Doherty should have been disqualified.

We hold that the issues raised in this case do not involve a substantial, relevant relationship or overlap with the issues involved in Doherty's prior representation of Hill Schroll. Although Doherty advised Hill Schroll to create a personal timber trust in 1947 and to create a personal non-timber trust in 1967, Doherty's representation of Hill Schroll on these matters was not related to the pending issues. In addition, Doherty represented Hill Schroll on a variety of matters that Richard Wilhoit, in a July 10, 1989 letter, refers to as "trust, tax, and personal matters." A review of the record reveals that Doherty did not actually prepare Hill Schroll's income and gift taxes, but supervised and reviewed their preparation by Edward Zamansky, Hill Schroll's St. Paul accountant, and signed the final returns. Mr. Wilhoit stated he had no recollection of ever having personal discussions with Hill Schroll about this work and that all his communications were through First Trust or Mr. Zamansky.

■ There is one further allegation concerning Doherty's representation of First Trust in this matter. In the late 1970s, Irving Clark, an attorney at Doherty, advised Hill Schroll and First Trust that Hill Schroll could not appoint and remove trustees from her 1917 trust. In May 1987, Richard Wilhoit of Doherty told Hill Schroll and First Trust that Hill Schroll could appoint an additional trustee to her trust. Later, after Doherty no longer represented Hill Schroll, Doherty represented First Trust when it petitioned the district court for instructions regarding Hill Schroll's 1917 trusts. In the instructions, First Trust questioned whether Hill Schroll comprehended the "implications" of removing First Trust as trustee and appointing her two children as trustees. It also claimed the trust did not permit Hill Schroll to unilaterally appoint or remove trustees.

The trial court found that Hill Schroll had no expectation that her communications with her attorneys at Doherty about her power to appoint or remove trustees would be kept confidential from First Trust. This finding is significant:

[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client.

*Williamsburg Wax Museum v. Historic Figures, Inc.*, 501 F.Supp. 326, 330 (D.D.C. 1980) (quoting *Allegaert v. Perot*, 565 F.2d

---

5. There were four principal issues in this litigation: (1) construction of the appointment and removal clause in the Schroll 1917 trust; (2) Hill Schroll's capacity to understand the consequences of her acts with regard to the appointment of trustees; (3) First Trust's breach of fiduciary duty and the approval of its annual accountings; and (4) First Trust's management plan, harvest decisions, and disclosures to the beneficiaries concerning the timber assets.

246, 250 (2d Cir.1977)) (emphasis in original); *see also* Minn.R.Prof.Conduct 1.9 1985 cmt. ("the fact a lawyer once served a client does not preclude the lawyer from using generally known information about that client when later representing another client").

Given that (a) Hill Schroll had independent attorneys for each of her transactions, (b) it was well known by the Schrolls that Doherty represented First Trust, and (c) Doherty attorneys testified they never met privately with Hill Schroll to discuss business issues, we conclude Doherty was not in a position to receive information from Hill Schroll that the Schrolls could reasonably have assumed Doherty attorneys would withhold from First Trust. Consequently, the substantial relationship test is not implicated and there was no ground to disqualify Doherty.

■ Even if a substantial relationship warranting disqualification existed, the Schrolls must show that the trial court abused its discretion by weighing the equities in favor of First Trust and denying the disqualification. *See Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 869 (Minn. 1989). The following equities favor First Trust: (1) an attorney-client relationship spanning seven decades existed between Doherty and First Trust; (2) Doherty had represented First Trust as trustee for the 1917 trusts in 23 separate legal proceedings before this litigation; (3) no client confidences had apparently been disclosed by Hill Schroll to Doherty other than in its capacity as attorneys for the trustee; (4) Hill Schroll was at all times aware that First Trust was privy to all communications between Doherty and her on the subject of her power to appoint or remove trustees; and (5) Hill Schroll has always had independent attorneys and looked to Doherty as only secondary representation. Under these circumstances, we cannot say the trial court abused its discretion by weighing the equities in favor of First

Trust, by protecting First Trust's right to retain Doherty, and by denying disqualification.

■ The Schrolls also contend that Doherty violated rule 1.7 of the Minnesota Rules of Professional Conduct:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

The Schrolls argue that Hill Schroll was a "current" client of Doherty in September 1989, and therefore Doherty should be disqualified under rule 1.7 because Doherty's position was "directly adverse" to Hill Schroll. We disagree. The trial court found that Hill Schroll terminated her attorney-client relationship with Doherty on March 27, 1989. *See Buckentin*, 410 N.W.2d at 823 (existence of attorney-client relationship is factual determination). This finding has support in the record and has not been challenged; therefore, because Hill Schroll was not a client of Doherty when the September 1989 petition for instructions was filed, rule 1.7 is inapplicable.

## VIII.

The trial court found the attorney fees, expert witness fees, and disbursements in this case, totalling $1,382,298.12,[6] were incurred in the ordinary course of administration of Maud Schroll's trust and properly chargeable only to the Maud Hill Schroll 1917 trust.

Determination of whether attorney fees will be chargeable to a trust is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re Great N. Iron Ore Properties Trust*, 311 N.W.2d 488, 492 (Minn.1981).

---

**6.** According to J. Christopher Schroll, First Trust spent $6 million of the Schroll trust corpus and interest litigating this case. First Trust only seeks approval of the payments made from the Schroll trust between 1988 and 1990. University Bank argues First Trust will probably seek approval of the remaining attorney fees during subsequent accountings. Only the $1,382,298.12 in fees allowed by the trial court is currently before this court on appeal.

In multi-party suits, the court has discretion to fairly apportion costs to the parties. *See Klinzing v. Gutterman*, 250 Minn. 534, 538, 85 N.W.2d 665, 668 (1957).

In actions prosecuted or defended by a trustee, costs and disbursements shall be chargeable to the trust estate unless the court directs them to be charged against the trustee personally because of mismanagement or bad faith. Minn.Stat. § 549.14 (1990). A trustee is entitled to reasonable attorney fees incurred in good faith in defending its administration of the trust instructions, defending a proceeding for the benefit of the trust, and defending a beneficiary's challenge to the trust's administration. *See Kronzer v. First Nat'l Bank*, 305 Minn. 415, 430, 235 N.W.2d 187, 196 (1975); *In re Freeman's Trust*, 247 Minn. 50, 56, 75 N.W.2d 906, 910 (1956).

We note initially that the trial court determined the amount of attorney fees and expenses by weighing the relevant factors.[7] After reviewing the proposed amount of fees, the trial court reduced the amount by $44,033.67 for fees improperly charged to the Hill Schroll 1917 Trust. University Bank does not contest the amount of fees, but advances two arguments challenging their allocation.[8]

First, University Bank argues First Trust should have charged one-third of the attorney fees for this proceeding to each of the three 1917 trusts. We disagree. The other two 1917 trusts did not challenge First Trust's timberland management or assert the power to appoint and remove trustees that in effect intensified and extended this litigation. Moreover, the other two trusts did not file counterclaims or engage in the "burdensome, unnecessary, wasteful and duplicative" litigation as found by the trial court. Under these circumstances, the trial court acted within its discretion by allocating the fees only to the Hill Schroll 1917 Trust.

Second, University Bank contends First Trust should reimburse the Schroll trust for all assets it spent defending the Oregon timberland managers, Doherty, and itself in its capacity as managing agent. In *Freeman's Trust*, relied upon by University Bank, the trust beneficiaries challenged the conduct of a trustee who served in the dual capacity of trustee and managing agent of property belonging to the trust. The trial court found in favor of the trustee on every charge except one, which involved mismanagement. In assessing attorney fees, the trial court found that half of the services of the trustee's attorneys were done for the trustee in his capacity as managing agent. The court concluded these services were not chargeable to the trust and the supreme court affirmed. *Freeman's Trust*, 247 Minn. at 55, 75 N.W.2d at 910.

University Bank's reliance on *Freeman's Trust* is misplaced. In this case, First Trust successfully defended against all the allegations of mismanagement and therefore the grounds used to apportion attorney fees in *Freeman's Trust* are not present in this case. Equally important in this case, unlike in *Freeman's Trust*, there is a finding that the Schrolls engaged in burdensome litigation. Under these circumstances, we cannot say the trial court abused its discretion by not apportioning attorney fees among the three 1917 trusts.

## IX.

First Trust contends that sanctions should be imposed against the Schrolls' trial attorneys because of their onerous behavior during the course of this litigation. The trial court determined that fees and expenses were the result of a "burden-

---

7. In setting allowances for attorney fees and expenses, the trial court should consider (a) the character, ability, and experience of the attorney; (b) responsibility assumed; (c) difficulty of the issues raised; (d) the time, labor, and skill required; (e) customary fees for similar services; (f) the amount involved; and (g) the results obtained. *In re Great N. Iron Ore Properties Trust*, 311 N.W.2d at 493.

8. First Trust claims University Bank lacks standing to challenge the trial court's allocation of attorney fees. The Schrolls, who plainly have standing to contest the attorney fees issue, have adopted University Bank's argument and therefore we reach the merits of the claim.

some, unnecessary, wasteful and duplicative course of litigation pursued by the Schrolls." The trial court also found the Schrolls' duplicitous motions were mere modifications of prior motions causing the court considerable time and expense and resulting in an excessive amount of attorney fees. However, sanctions were not imposed on the attorneys because the trial court found it was "unable" to do so under the law governing application of Minn. R.Civ.P. 11 in this state.

First Trust initially moved for sanctions in May 1991. The trial court declined to rule on the motion at that time, "[s]ince there [were] many matters pending." It stated, however, that First Trust could renew the motion after completion of all trial matters. First Trust continued to move for sanctions, but the trial court declined to rule on the motions. Although the trial court did not specifically determine a rule 11 violation did occur, it found the Schrolls' attorneys engaged in conduct that could constitute a rule 11 violation.

A trial court's decision regarding sanctions will only be reversed for an abuse of discretion. *Uselman,* 464 N.W.2d at 141. The imposition of sanctions is generally mandatory when a party engages in conduct that is intended to "harass or cause unnecessary delay or needless increase in the cost of litigation." Minn.R.Civ.P. 11; *Uselman,* 464 N.W.2d at 142. However, our supreme court has established minimum procedural guidelines in *Uselman* that were not complied with in this case.

In order "[t]o facilitate an orderly and uniform approach to the imposition of sanctions," the trial court should not tolerate abuses during the course of litigation and then impose sanctions at the conclusion of the proceedings. *Uselman,* 464 N.W.2d at 143. The policy of deterrence is not well served by such an approach. Instead, "[a] proper sanction assessed at the time of the transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions." *Id.* (quoting *In re Yagman,* 796 F.2d 1165, 1183 (9th Cir.1986), *modified,* 803 F.2d 1085 (9th Cir. 1986), *cert. denied, Real v. Yagman,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987)).

The Schrolls' attorneys were not put on sufficient notice that the trial court was in fact considering imposing sanctions. Each time a motion for sanctions was made, the trial court stated it would not consider sanctions until the conclusion of trial. As our supreme court has plainly indicated:

> Only in very unusual circumstances will it be permissible for the trial court to wait until the conclusion of the litigation to announce that sanctions will be considered or imposed.

*Uselman,* 464 N.W.2d at 143. The circumstances of this case were not so unusual as to warrant withholding consideration or imposition of sanctions until the end of trial. By concluding it was unable to impose sanctions at the end of the trial when the Schrolls' attorneys were not put on sufficient notice, the trial court correctly applied rule 11. Hence, the trial court did not abuse its discretion by refusing to impose sanctions.

### DECISION

Maud Hill Schroll does not have the unilateral power to appoint and remove trustees. The trial court acted within its discretion by restricting University Bank's role as an intervenor during this litigation. The trial court's dismissal of First Trust's Oregon agents is not reversible error. The trial court properly dismissed the Schrolls' pre–1988 mismanagement and breach of fiduciary duty claims against First Trust on the grounds of res judicata and the pre–1984 claims on the grounds of the statute of limitations. The Schrolls had no right to a jury trial on their alleged abuse of process claim. The trial court acted within its discretion by denying the Schrolls' motions to disqualify Doherty from representing First Trust, by only allocating attorney fees to the Hill Schroll Trust, and by refusing to impose sanctions against the Schrolls' trial attorneys. We affirm in all respects.

**Affirmed.**